LIZZIE CUMMINGS

*vs.*

KENNEBEC MUTUAL LIFE INSURANCE COMPANY.

Hancock.    Opinion March 21, 1896.

*Life Insurance.    Application.    Fraud.    Verdict.*

In a written application for a certificate of membership in a life insurance company, the insured "declared and warranted that his answers and statements are full, complete and true," and agreed that "if there has been any concealment, misrepresentation or false statement or statement not true" made therein, then the certificate shall be null and void." *Held;* in this case, that it is established by clear and convincing evidence that at least eight of the insured's answers to material questions asked by the medical examiner were not true; and, although it is not incumbent on the defense to prove that the insured knew them to be untrue, the conclusion is irresistable that at least five of these answers must have been fraudulent as well as false.

Where one asserts that certain statements are true, and that if not true this fact shall avoid the policy, the question whether they were actually material is not important, as parties have a right to make their truth the basis of the contract; but where the insured obtained from the medical examiner a recommendation to which he was not entitled, by means of wilful false statements, and the intentional concealment of the truth, in relation to matters which were undoubtedly material to the risk, this the law denominates fraud and sternly refuses to allow any person to profit by it.

When a verdict is unmistakably wrong and appears to have been rendered under the influence of sympathy, or prejudice, and in flagrant disregard of the substantial facts submitted in evidence, it will be set aside.

ON MOTION BY DEFENDANT.

The case is stated in the opinion.

*E. S. Clark*, for plaintiff.

*H. M. Heath, and C. L. Andrews, W. T. Haines*, with them, for defendant.

SITTING: PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, WIS-
WELL, STROUT, JJ.

WHITEHOUSE, J.   The verdict for the plaintiff in this case is
unmistakably wrong and must be set aside.   It appears to have
been rendered under the influence of sympathy or prejudice, and in
flagrant disregard of the substantial facts submitted in evidence.

The plaintiff is one of the beneficiaries named in a policy of life
insurance, or certificate of membership, which was issued by the
defendant to the plaintiff's husband Thomas F. Cummings, July
23, 1892.   The application is dated July 10 and the medical exam-
nation was made July 18, 1892.   The insured died January 2, 1893,
from hemorrhage of the bowels caused by tuberculous consumption.

By the terms of the policy, the application including the medical
examination, is made a part of the contract, and the certificate is
declared to be issued and accepted " on condition that the state-
ments made in the application by and in behalf of the member are
in all respects true."   In the application the insured over his own
signature " declares and warrants that his answers and statements
are full, complete and true;" and agrees that " if there has been any
concealment, misrepresentation or false statement or statement not
true " made therein, " then the certificate shall be null and void."
At the close of the medical examination the insured again " de-
clares and warrants " that his answers to the questions put by the
medical examiner " are full and true."

Yet it is established by clear and convincing evidence that at
least eight of the insured's answers to material questions asked by
the medical examiner were not true, and although it is not incum-
bent on the defense to prove that the insured knew them to be
untrue, the conclusion is irresistible that at least five of these an-
swers must have been fraudulent as well as false.

In the medical examination made July 18, 1892, the second ques-
tion is: " have you now or have you ever had any of the following
affections or diseases?" and among other specifications and answers
appear the following:   " Spitting of blood?   No.   Chronic cough?
No.   Inflammation of the lungs?   No.   Pleurisy?   No.   Con-
sumption?   No."

To the seventh question "Do you now possess a sound constitution and good health?" the answer is "Yes."

To the fifteenth question "How long is it since you were attended by a physician or have professionally consulted one?" the answer is "four months."

To the seventeenth question, "Have any material facts regarding your past health or present condition been omitted?" the answer is "No."

But in order to meet the requirements of the policy for satisfactory proof of the manner and cause of death, the plaintiff herself was compelled to introduce, as a part of her evidence, the "attending physician's certificate." In this certificate made under oath, Dr. Chandler states that he was the "usual medical adviser" of the insured after April, 1892; that the "duration of his last illness" was from April, 1892, to the date of his death January 2, 1893; that the first time he prescribed for him was in April and the last time December 28, 1892; that when he first prescribed for him he had hemorrhages from the lungs and a constant cough, expectorated pus, and was emaciated and weak, and finally that the immediate cause of his death was hemorrhage from the bowels as a result of tuberculous consumption. In his testimony as a witness for the defense, Dr. Chandler gives a detailed history of his treatment of the case and only emphasizes the statements in the certificate. He testifies that he saw him and treated him professionally as often as once a week from the first of April until July; that his cough continued and he had all the characteristic symptoms of consumption; that he prescribed the usual treatment for consumption, and that there was no question that he had consumption, and a well marked case of it from April, 1892, until the date of his death.

This evidence of Dr. Chandler is corroborated by the claimant herself who is compelled to admit that her husband consulted Dr. Chandler professionally several times in "April and May" and that he had a cough at that time.

It is corroborated by Mr. Drew, the agent of the Maine Central Railroad at Bar Harbor, who testifies that he employed Cummings June 1, 1892, to work on the wharf, and noticed that prior to July

18, he was weak and coughed somewhat; that he was unable to do the work required of him without assistance, and looked like a sick man.

It is also corroborated by Dr. Morrison of Bar Harbor, who treated him for influenza, or grip in February and March 1892. He testifies that he also prescribed for him for hemorrhage of the lungs and for pleurisy with effusion, in February or March and before March 20, 1892, and that he saw him in the summer when his appearance was that of a man somewhat emaciated. He further testifies that, in 1892, he was examiner for the defendant company among others, and that about the middle of July, Cummings came to his office and asked him to examine him for life insurance in the defendant company, and that he positively refused to examine him and distinctly stated to him that he was not a fit subject for life insurance; that he couldn't recommend him and that he would only be rejected.

Dr. William Rogers kept a drug store at Bar Harbor, and testifies that the claimant frequently came into his store in the summer of 1892 and bought cough medicines and recognized remedies for consumption, saying that her husband was a sick man and had a bad cough and hemorrhages.

Yet on the 18th day of July, accompanied by this claimant, he presented himself for medical examination at the office of Dr. Hagerthy of Ellsworth, another examiner of the defendant company, to whom he was an entire stranger. It appears to have been a week when his symptoms were more favorable, and his condition more indicative of health. He was bronzed by exposure to the sun on the wharf, and in that respect had the appearance of a laboring man in ordinary health. But conscious that he was not a proper subject for life insurance, and rightly apprehending from his interview with Dr. Morrison that he would not be recommended if he disclosed the truth in regard to his state of health for the four months next preceding, he suppressed all mention of his treatment by Dr. Chandler during that entire period, named Dr. Morrison who had not prescribed for him after March 20 as his "usual medical adviser," and stated that he had not consulted a physician for

four months.  He may be excused for not believing that he had consumption, but his denial that he ever had chronic cough, spitting of blood, inflammation of the lungs and pleurisy, against the overwhelming testimony that he had been afflicted with all those troubles, and his statement that he had omitted nothing in regard to his past health or present condition, were manifestly false and fraudulent.  He obtained from the medical examiner a recommendation to which he was not entitled, by means of wilfully false statements, and the intentional concealment of the truth, in relation to matters material to the risk.  This the law denominates fraud, and sternly refuses to allow any person to profit by it.

It is not incumbent on the defendant, however, to show that the answers were fraudulent.  As stated by the court in *Cobb* v. *Covenant Mut. Ben. Ass'n*, 153 Mass. 176, "where one asserts that certain statements are true, and that if not true this fact shall avoid the policy, the question whether they were actually material is not important, as parties have a right to make their truth the basis of the contract."  See also *Johnson* v. *Me. & N. B. Ins. Co.*, 83 Maine, 182.

*Motion sustained.*