Aloe v. Mutual Reserve Life Ass'n.

ALOE v. MUTUAL RESERVE LIFE ASSOCIATION, Appellant.

Division Two, February 7, 1899.*

147 561
88a 673,

147 561
164 685
164 693
164 700

147 561
171 ¹383
95a ¹366
97a ³457
97a ³647
97a ⁴652

1. Life Insurance: ON ASSESSMENT PLAN: WARRANTIES. Although the policy of an insurance company on the assessment plan, does not use the word "warranty," yet if the policy states that it has been issued in "consideration of the answers, statements and agreements contained in the application for this policy, which are hereby made a part of this contract," and the application states "it is hereby agreed that the answers and statements in this application are warranted to be full, complete and true, and this agreement, together with this application, is hereby made a part of any policy that may be issued hereon," and "if not true, the policy shall be void," it will be held that the warranty is of the same significance as if contained in the policy.

2. ———: ———: ———: MATERIALITY. A warranty in an insurance policy on the assessment plan must be strictly complied with. No inquiry can be allowed into the materiality or immateriality of the fact warranted. The warranty is in the nature of a condition precedent.

3. ———: ———: ———: ———: ABSOLUTELY TRUE. Where answers to questions propounded in the application are made warranties in the policy, they must be absolutely true, and if not true the policy will be void, and it makes no difference whether the answers were material to the risk or not.

4. ———: ———: ———: ———: BREACH: PRIOR SICKNESS. The insured stated he had not consulted or been treated by a physician in thirty years, and these statements were untrue. Held, that this was a breach of the warranty.

5. ———: ———: ———: ———: ———: REJECTED BY OTHER COMPANIES. Insured stated in the application that he had been rejected by two companies six years previously, when in truth he had been rejected eight times by six companies. Held, to be a breach of the warranty.

6. ———: ———: ———: ———: ———: PRIOR INSURANCE. The insured did not in his application, in answer to an inquiry as to what other policies he held, mention one for $5,000 obtained from another company only a few months previously. Held, to be a breach of the warranty.

*NOTE.—Decided December 20, 1898. Motion for rehearing filed: overruled February 7, 1899.

*Appeal from St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED.

WM. C. & JAS. C. JONES and GEORGE BURNHAM, JR., for appellant.

(1)   The statements and answers in the application are warranties, and the court erred in holding that such statements were only representations.   Hanford v. Mass. Ben., 122 Mo. 58; Whitmore v. Sup. Lodge, 100 Mo. 47; Jacobs v. Omaha Life, 142 Mo. 49; Haynie v. Knights Templar, 139 Mo. 416; Sparks v. Knights Templar, 61 Mo. App. 109; Theobald v. Supreme Lodge, 59 Mo. App. 87; Richards v. Ins. Co., 68 Mo. App. 585.   (2)   The answers and statements in an application for an insurance policy are warranties where:   (a)   Direct questions are asked and answered.   May on Ins., sec. 156; Cooke on Ins., sec. 18, p. 34.   (b)   When by the terms of the contract the answers are expressly agreed to be warranties.   Ins. Co. v. McTague, 49 N. J. L. 588; Wilkins v. Mutual Reserve, 54 Hun. 294; Mers v. Ins. Co., 68 Mo. 131; Reid v. Piedmont Ins. Co., 58 Mo. 421.   (c)   When the application is referred to in the policy, and made a part of the contract.   May on Ins., secs. 156, 158, 159; Beach on Ins., sec. 456; Foot v. Aetna, 61 N. Y. 575; Koontz v. Ins. Co., 42 Mo. 131; Clemans v. Sup. Assembly, 131 N. Y. 485.   Therefore the court erred in refusing to instruct that the answers were warranties and instructing that they were merely representations.   A warranty must be absolutely and literally true, or the policy is avoided; and the question of "materiality to the risk" should not be submitted to the jury.   Aetna Life Ins. Co. v. France, 91 U. S. 510; Jeffries v. L. I. Co., 22 Wall. 47; Brockway v. Mut. Ben., 9 Fed. Rep. 249; Hanford v. Mass. Ben., 122

Mo. 50, 60; Whitmore v. Sup. Lodge, 100 Mo. 36; Reid v. Piedmont Ins. Co., 58 Mo. 423; Loehner v. Ins. Co., 17 Mo. 255; Linz v. Ins. Co., 8 Mo. App. 372; Koontz v. Ins. Co., 42 Mo. 131; Mers v. Ins. Co., 68 Mo. 131; Ramer v. Ins. Co., 70 Mo. App. 47; Cobb v. Ass'n, 153 Mass. 176; Foot v. Aetna, 61 N. Y. 575; Wilkins v. Mut. Res., 54 Hun. 294; Dwight v. Germania, 103 N. Y. 347; Clemans v. Sup. Assembly, 131 N. Y. 485; Phillips v. N. Y. L. I. Co., 9 N. Y. Sup. 837; Kelly v. L. I. Co., 26 Ins. L. J. 892; Cooperative Ass'n v. Leflour, 53 Miss. 215; Prov. Sav. L. Ass'n v. Reutlinger, 58 Ark. 528; McKenzie v. Scottish Union, 112 Cal. 555; Bloomer v. Ins. Co., 45 Wis. 622; May on Ins., secs. 156, 158, 159; Beach on Ins., sec. 456; Cooke on Ins., sec. 15.    (3)    Conceding (solely, however, for the purpose of this point) that the answers of Aloe were not warranties, still they were material representations, and should have been so declared by the court as a matter of law.    Aetna v. France, 91 U. S. 516; Loehner v. Ins. Co., 17 Mo. 257; Mers v. Ins. Co., 68 Mo. 131; Jeffries v. Ins. Co., 22 Wall. 54; Campbell v. Ins. Co., 98 Mass. 402; Hartman v. Keystone, 21 Pa. St. 467; Aid Society v. White, 100 Pa. St. 16; Foot v. Aetna, 61 N. Y. 576; Elliott v. Mutual Res., 76 Hun. 378; Numrich v. Sup. Lodge, 3 N. Y. Sup. 582; Johnson v. Maine Ins. Co., 83 Me. 383; Miller v. Mut. Ben., 31 Ia. 232; Fame v. Thomas, 111 Ill. App. 555; Cuthbertson v. Ins. Co., 96 N. C. 486; Wilson v. Conway, 4 R. I. 156; Anderson v. Fitzgerald, 4 H. L. Cases, 484; Davenport v. N. Eng. Co., 6 Cush. 340; May on Ins., sec. 185; Cooke on Ins., sec. 17; Bacon, Ben. Societies, sec. 212.

NOBLE & SHIELDS for respondent.

(1)    The answers and statements in the application at bar are not warranties.    (a)    Under this head we distinguish the cases in Missouri cited by appellant, showing that

they generally are constructions of conditions in the policy itself. (b) That the policy, application and constitution, in the case at bar, taken together, leave the question open to construction as to whether the answers of Mr. Aloe were warranties and they must be construed strictly against the appellant. Moulor v. Ins. Co., 111 U. S. 335; Alabama Gold Ins. Co. v. Johnson, 80 Ala. 467; Tesson v. Ins. Co., 40 Mo. 33; s. c., 50 Mo. 112; Renshaw v. Mo. State Mutual, 103 Mo. 604; Hoffman v. Manufacturers' Co., 56 Mo. App. 301; Hoffman v. Ins. Co., 32 N. Y. 405; Reynolds v. The Commerce Fire Co., 47 N. Y. 597; Ethington v. Dwelling House, 55 Mo. App. 129; 1 Joyce on Ins., secs. 186, 187; American Life Ins. Co. v. Day, 39 N. J. L. 89; Ins. Co. v. Crandall, 120 U. S. 527; Price v. Ins. Co., 17 Minn. 497; Campbell v. N. E. Mut. Life, 98 Mass. 381; Brink v. Ins. Co., 49 Vt. 457; Ketterboch v. Ins. Co., 49 Neb. 841; 2 Joyce on Ins., sec. 1890; Miller v. Ins. Co., 31 Ia. 22; Rockingham v. Ins. Co., 52 N. H. 581; Causal v. Ins. Co., 31 Minn. 17; Holbrook v. Ins. Co., 25 Minn. 229; Schwartzbach v. Ohio Valley Pro. Union, 25 W. Va. 622; Bank v. Ins. Co., 95 U. S. 673; Life Ins. Co. v. Wood, 54 Kan. 663; Indiana Farm Live Stock v. Randall, 34 N. E. Rep. 588; Rogers v. Ins. Co., 121 Ind. 570; Ins. Co. v. Wiler, 100 Ind. 92. (2) The answers were not warranties, neither were they representations, which, if found untrue, in any respect would avoid the policy as a matter of law, and the jury be directed to find for the appellant. 2 Joyce on Ins., secs. 1883, 1884, 1892, 1898, 1910; Closon v. Smith, 3 Wash. 156; Flinn v. Headlam, 9 Barn. & C. 693; Fitch v. Ins. Co., 59 N. Y. 557; Hampden v. Ins. Co., 4 R. I. 159; Fisher v. Ins. Co., 33 Fed. Rep. 449; Dilleber v. Ins. Co., 69 N. Y. 256. (3) The aswers in the application were not material to the risk and were substantially true and did not mislead the defendant. Under this head we discuss the specific questions and answers pleaded as

defenses by appellant, and under authorities cited show they were not material and did not mislead the defendant. 1 Bacon on Ben. Societies, sec. 230a; Brown v. Ins. Co., 65 Mich. 306; Morrison v. Ins. Co., 59 Wis. 170; French v. Mut., etc., Ass'n, 111 N. C. 391; Hann v. Ins. Co., 56 N. W. Rep. 834; Provident Life Ass'n v. Reutlinger, 25 S. W. Rep. 835; Cushman v. U. S. Life Ins. Co., 70 N. Y. 72; Goucher v. Northwest Traveling Men's, etc., 20 Fed. Rep. 600; N. W. Mut. Life v. Heinman, 93 Ind. 24; Holloman v. Life Ins., 1 Woods (C. C.), 674; Singleton v. St. Louis Ins., 66 Mo. 63; Boos v. Ins. Co., 64 N. Y. 236; Ins. Co. v. Trefz, 104 U. S. 197; Ins. Co. v. Wise, 34 Ind. 599; Fitch v. Ins. Co., 59 N. Y. 557; Dilleber v. Ins. Co., 69 N. Y. 256; Mut. Reserve Fund v. Sullivan, 29 S. W. Rep. 190.

BURGESS, J.—The defendant is a corporation incorporated under the laws of the State of New York, and under its charter its business is limited to insurance on the assessment plan, and having complied with all the requirements of our laws, is authorized to transact business in this State on that plan.

This suit is based upon a policy of insurance issued by the defendant on the thirteenth day of October, 1890, on the life of Albert S. Aloe, in the sum of $5,000, payable to the plaintiff who is the wife of said Albert.

The application for the policy was in writing, and signed by the insured on the third day of October, 1890, at the city of St. Louis, Missouri, and by him forwarded to defendant at its home office in the city of New York.

On January 30, 1893, Albert S. Aloe died, and after proofs of death as required by the terms of the contract had been made, and defendant's refusal to pay the amount of the policy, this suit was instituted. The petition is in the usual form in such cases.

The answer admitted the plaintiff's case and then

pleaded affirmatively breaches of warranty in the application for the insurance and fraudulent statements inducing the issue of the certificate. The breaches of warranty and false answers alleged by defendant related to the then physical condition of insured; to prior rejections of insured for insurance; unfavorable opinions of physicians in connection therewith; consultation and treatment by physicians and change of climate by insured for his health, and other insurance not disclosed by Aloe in his application.

Issue was joined by reply, denying the new matter in defendant's answer.

The trial was before the court and jury, and resulted in a verdict and judgment in favor of plaintiff for the full amount of the policy, from which, after unsuccessful motion for a new trial defendant appeals.

The policy provides that in consideration of the answers, statements and agreements contained in the application for the policy of insurance which are made part of the contract, and of the payment of $40 as admission fee, etc., Albert S. Aloe is admitted to membership in the association.

In the application the assured was asked a number of questions, which he answered in writing; those being material to the issues involved in this litigation and the answers thereto, are as follows:

"No. 9. Has the applicant now any insurance on his life? If so, where, when taken, for what amounts, and what kinds of policies?"

Answer. "Germania, N. Y., endowment; issued about 1880, $2,500; Washington Life, endowment, about 1878, $4,500; Conn. Mutual 10-year plan, about 1875, $2,500; paid up, Bay State, $5,000."

"No. 10. Has any proposal to insure the life of the applicant ever been postponed or declined? If so, by what company or association, and for what reason?"

Answer. "Yes, N. Y. Life and Conn. Mut. about six years ago, on account of traces of albumen."

"No. 11.  a.  Has any proposal or application to insure the life of the applicant, or for membership, ever been made to any company, association or agent, upon which a policy or certificate of membership has not been received by you in person for the full amount and kind, and at the rate applied for?"

Answer.  "Yes, as above."

"b.  Have you any insurance on your life or membership in any company or association not mentioned in answer to the above question?"

Answer.  "Mo. Masonic, $5,000; Legion of Honor, $2,000."

"No. 12.  Has any physician given an unfavorable opinion on the life of the applicant with reference to life insurance or otherwise?  If so, state particulars."

Answer.  "As above."

"No. 13.  Has the applicant ever had illness, local disease, injury, mental or nervous disease or infirmity?  If yes, state nature, date, duration and severity of attack?"

Answer:  "No."

"No. 14.  a.  How long since you consulted or was attended by a physician?"

Answer.  a.  "Not since over thirty years."

"No. 15.  Have you ever used externally or internally any patent proprietary, or other medicines, within the past two years?  If so, for what disease?"

Answer.  "No."

"No. 17.  Have any facts regarding your past health or present condition been omitted?"

Answer.  "No."

The application is in three parts, and in part two of said application, being answers of the said Albert S. Aloe, to questions by the medical examiner, he warranted that his answers, written to the questions therein propounded, were his answers, and were full, complete and true, and agreed that

the same should be made a part of the contract of his certificate of membership or policy of insurance in the defendant association, and that he was the person who signed the application aforesaid, and was examined as therein stated. And in that part of said application, the following questions were put to the said Albert S. Aloe, to which he made the following answers respectively:

"2. Is the applicant now and has the applicant been in good health through all the past twelve months, and free from all diseases, weakness or infirmity?"

Answer. "Yes."

"7. Has change of climate or location ever been sought, or advised, or have you visited any place for the benefit of, or on account, of your health? If so, when, where and for what? Answer fully."

Answer. "No."

"11. Has the applicant ever had any illness, local disease, injury, mental or nervous disease or infirmity, or ever had any disease, weakness or ailment of the head, throat, lungs, heart, stomach, liver, kidneys, bladder, or any disease or infirmity whatever. If yes, state nature, date, duration and severity of attack."

Answer. "No."

The by-laws of defendant association provide that: "Only such persons as are in good health, who shall pass a rigid medical examination, and be approved by the medical director or his deputy, and the executive committee, or its duly appointed representative, may become members of the association, subject to all the requirements of membership set forth in the constitution or by-laws and the application for and certificate of membership.

"Every application for membership must be in writing, and shall be and constitute a warranty as to all matters stated therein, and must answer satisfactorily all questions

set forth in the form of application adopted by the executive committee.

"If at any time any person secures membership in this association by concealing any fact, or if the statements in his application for membership are in any respect untrue, or if any of the conditions or provisions upon which the certificate of membership is issued are violated, or if any of the conditions or provisions of the certificate of membership or of the constitution or by-laws are violated, then and in every such case such membership shall at once cease and determine, and the certificate shall be null and void, and all payments made thereon forfeited to the association. But the executive committee shall have the power to reinstate a delinquent member at any time within one year for good cause shown, and upon satisfactory evidence of good health, and upon payment of all delinquent dues and assessments."

Upon the trial it was stipulated between the parties that the defendant company is a mutual life insurance company organized under the laws of the State of New York, and that the contract of insurance sued on is a contract of insurance on the assessment plan within the meaning of the laws of Missouri.

With respect to the statement by Aloe to the effect that he had not consulted or been attended by a physician for over thirty years at the time he made application for the insurance, the evidence showed that he had been repeatedly treated by physicians during that time, and on several occasions had his urine examined, and that some of the physicians were of the opinion that he had albuminuria.

As to former rejections of Aloe by other companies the evidence was as follows:

In 1884 he was rejected by the examiner of the Mutual Life Insurance Company of New York after two different examinations had been made by the St. Louis physicians, and both advised him that it was useless to go further; the

first examination was by Dr. Barrett and the other examination, three or four months later, by Dr. Coles. Both physicians rejected the risk, and in each instance the result was communicated to Aloe by the agent Baker.

In January, 1885, he was twice rejected by the Equitable Life Assurance Society on two different applications, of which rejections Aloe had information from the agent Block.

In October, 1885, he was rejected by the Washington Life Insurance Company, and the fact of this rejection communicated to him by the agent Kimball and the examining physician Nelson.

About a year later (1886) he went on to New York and was again examined by the physicians of the Equitable Life Assurance Society and the New York Life Insurance Company and again rejected, of which rejections he was notified.

In 1892 he admitted to Dr. Bernays that he had been rejected by several companies.

In May, 1890, he admitted to Dr. Martin L. Stevens that he had been rejected by the Equitable Life Assurance Society and by the Connecticut Mutual Life Insurance Company, and by the Mutual Life Insurance Company of New York, and that he had suffered more or less for years from albumen in the urine. That instead of being rejected by the New York Life Insurance Company for mere traces of albumen, he was rejected on Dr. Baumgarten's examination for distinct quantities of albumen, and the nature of his trouble was so serious as to induce Mr. Aloe to employ Dr. Baumgarten as his physician, and a year later when he renewed his effort to get into the Equitable, not mere traces, but copious quantities of albumen, were found after two separate examinations on different days.

As to the declinations by other insurance companies to insure the life of Aloe, Dr. William Webb testified that he had given an unfavorable opinion upon his life in connection

with two different applications made by Aloe to the Equitable Life Assurance Society.

Dr. Lambert testified that he had in the same connection confirmed the view of Dr. Webb, and a year later, Dr. Lambert after a personal examination of Aloe again rejected him.

Dr. Nelson testified that in 1885 he examined Aloe four times in connection with his application for insurance in the Washington Life Insurance Company and found albumen in his urine. It was further shown that Dr. McCready had confirmed the opinion expressed by Dr. Nelson in that connection.

In 1890 Dr. Bernays met Aloe in Berlin. Aloe said he was out there for his health; that a number of physicians in St. Louis had said he had albuminuria, and Dr. Bernays advised him to see Dr. Leyden, a celebrated diagnostician.

Five months prior to this application to defendant unfavorable opinions were given on Aloe's life after two separate examinations by the medical examiner of the Provident Savings Life Association.

As to the change of climate for benefit of Aloe's health the defendant proved as follows:

Aloe had stated to Suttie that he was going to Carlsbad because of ill health and specified kidney trouble; while at Carlsbad Aloe wrote Suttie describing his improved condition, and on his return told Suttie of the treatment he had taken and the physicians he had consulted. That Aloe consulted Drs. Bean, Baumgarten, Tuholske and others in St. Louis, and Drs. Bernhard, Loevy and Krause in Carlsbad.

After a visit to one of his physicians while at Carlsbad he told the Rev. Dr. Sale that his physician had informed him that he was not suffering with albuminuria, and expressed great joy that the opinions of his physicians in America were not confirmed.

Aloe told Dr. Stevens that he had made several trips to Europe, and had taken the treatment at the Springs because of albumen in the urine, and had just returned from a trip to Europe.

Concerning his physical condition (as to which Aloe stated that he was then in good health and that no facts concerning his physical condition had been omitted) the defendant proved the presence of albumen in the urine.

That Aloe admitted to Suttie that he had kidney trouble and five months before his application to defendant company he admitted to Dr. Martin L. Stevens that he had suffered more or less for years from albumen in the urine, and was then examined twice (on two different days) and albumen in copious quantities was discovered. As to other insurance the defendant proved that Aloe was insured in the Merchant's Life Association of America, which plaintiff at the trial admitted was in force at the time of Aloe's death.

Testimony introduced by plaintiff in rebuttal tended to show that Aloe was a man of great endurance; that his general appearance was that of a strong, healthy man, with a florid complexion, was never known to be sick by his intimate acquaintances except once with the grippe which kept him away from his business for a few days, and an ailment of the ear which was of short duration. Dr. Hill, the medical examiner for defendant, stated that he appeared to be a very healthy, sprightly man. Dr. Graves, who knew him for two or three years prior to the spring of 1890, stated that he seemed to be a man in perfect health. The certificate of Dr. Hill, being part of application pleaded by defendant, shows that Aloe's lungs, heart and blood vessels, pulse and urine were all normal and healthy.

Aloe died of suppression of the urine, or urina produced by acute suppression of the urine, in other words cessation

of the kidneys' action.    This his attending physician gave as
his opinion was caused by a mal-formed kidney.

At the close of all the evidence defendant asked an in-
struction in the nature of a demurrer to the evidence which
was refused, to which ruling of the court it excepted, and
saved its exceptions.

The court then over the objection of defendant in-
structed the jury upon the theory that the statements and
answers made by Aloe, in obtaining the policy of insurance,
were only representations and not warranties, and refused
all instructions asked by defendant to the effect that said
statements and answers were warranties.

It is insisted by defendant that under the stipulation
between plaintiff and defendant, the defendant is an insur-
ance company on the assessment plan, and the statements
and answers in the application for insurance, warranties, and
that the court erred in holding that such statements were
only representations.    Upon the other hand if it be true
that defendant is an assessment company, plaintiff denies
that because it is an assessment company, the statements
and answers in the application are warranties.

It was held in Hanford v. Mass. Ben. Ass'n, 122 Mo.
50, that section 5849, Revised Statutes 1889, which pro-
vides that no misrepresentation made in obtaining a life in-
surance policy shall render it void, unless the misrepresenta-
tion actually contributed to the event on which the policy
becomes due, and that whether it so contributed shall be a
question for the jury, does not apply to policies issued on the
assessment plan, under article 3, chapter 89 of Revised
Statutes 1889, as the latter article provides that a com-
pany doing business under its provisions shall not be subject
to any of the provisions of the general insurance law unless
so expressly declared in that article.    That case was cited
with approval in Haynie v. Knights Templars & Masons'
Indm. Co., 139 Mo. 416; Jacobs v. Omaha Life Ass'n, 142

Mo. 49; Sparks v. Life Indemnity Co., 61 Mo. App. 109; Richards v. Ins. Co., 68 Mo. App. 585, and must now be considered as the settled law of this State.

But plaintiff undertakes to differentiate that line of cases, and especially the Hanford case, from the one at bar, upon the ground that the court said in that case that "the representations made by the deceased are by the terms of the application *and policies* made warranties," while in the case at bar the word "warranty" is not used in the policy.

It is true that the word "warranty" is not used in the policy sued on, but it is recited therein that "in consideration of the answers, statements and agreements contained in the application for this policy of insurance, which are hereby made a part of this contract, and of the payment of forty dollars, etc., the association does hereby receive Albert S. Aloe as a member of the association;" and that in the application signed by him it is stated that, "It is hereby agreed that the answers and statements in this application, whether written by the applicant or not, are warranted to be full, complete and true, and that this agreement and the constitution and by-laws of the association, with the amendments thereto, together with this application, are hereby made part of any policy that may be issued hereon. That if any of the answers or statements made are not full, complete and true, or if any condition or agreement shall not be fulfilled as required by such policy, then the policy issued hereon shall be null and void, and all the moneys paid thereon shall be forfeited to the association."

It will thus be seen that by the terms of the contract the answers to the questions propounded in the application for insurance are expressly agreed to be warranties, and the application made part of the contract, and under such circumstances the warranty is of the same significance as if contained in the policy. [Reid v. Ins. Co., 58 Mo. 421;

Mers v. Ins. Co., 68 Mo. 127.]    And where a warranty is
part of a contract it must be strictly complied with.    "It is
in the nature of a condition precedent, and no inquiry is
allowed into the materiality or immateriality of the fact
warranted."    [Mers v. Ins. Co., *supra.*]

In Whitmore v. Sup. Lodge, 100 Mo. 36, it was ruled
that the statutory provisions as to misrepresentations, etc.,
did not apply to benevolent or charitable corporations.
The court, speaking through Sherwood, J., said: "In the
absence of such statutory regulations as prevail in cases of
ordinary insurance, false declarations, if made contrary to
the agreement of the parties, will vitiate and avoid a policy
of life insurance, although such declarations be not material
to the risk."    [Citing Ins. Co. v. France, 91 U. S. 510;
Jeffries v. Ins. Co., 22 Wall. 47; Brockway v. Mutual Benefit
Ins. Co., 9 Fed. Rep. 249.]    But it is claimed by plaintiff that
the cases cited from the United States Supreme Court have
been greatly modified by more recent decisions of that court,
and especially by the case of Moulor v. Ins. Co., 111 U. S.
335.    But in that case we think the application was mate-
rially different from the application in the case at bar.    In
that case the *application* provided:    "It is hereby declared
and warranted that the above are fair and true answers
.  .  .    And if there be any untrue, or evasive state-
ments or any misrepresentation or concealment," the policy
shall be void.    And the *policy* recited that the agreement
of the company to pay the sum specified is "in consideration
of the *representations* made to them in the application" and
of the payment of the premium at the time specified; further,
"it is hereby declared and agreed that if the *representations*
and answers made to this company, on the application for this
policy, upon the full faith of which it is issued, shall be
found to be untrue, in any respect, or that there has been
any concealment of facts, then and in every such case the

policy shall be null and void." While in the case in hand it is stated, "I warrant the statements as written in said application to be full, complete and true," and at the closing of the application it is stated: "It is agreed that the statements in this application, whether written by the applicant or not, are full, complete and true........ That if any of the answers or statements are not full, complete and true, or if any condition shall not be fulfilled, the policy shall be void, and again, "I do hereby warrant that the foregoing answers are full, complete, correct and true and the same shall be made a part of the contract." The court held that there was a conflict in the application and the policy; in the former the word "warranted" was used, while the policy upon its face characterized the statements of the insured as "representations," and the contract being so framed as to be of doubtful construction, rendering it doubtful whether the parties intended the actual truth of the applicant's statements to be a condition precedent to any binding contract, the court should have resolved against that construction which imposes upon the assured the obligations of a warranty.

We do not think that case modifies the Jeffries or the France case, which by reason of different provisions in the contracts involved in those cases are governed by different rules, and so it is in regard to this case. Indeed it was said in that case, "The law does not forbid parties to a contract for life insurance to stipulate that its validity shall depend upon conditions or contingencies such as the court below decided were embodied in the policy in suit. The contract involved in Jeffries v. Ins. Co., 22 Wall. 47, and Ins. Co. v. France, 91 U. S. 510, were held to be of that kind."

In speaking of the Moulor case in Johnson v. Ins. Co., 83 Me. 189, the court said: "There was no stipulation in the contract, that each question and answer should be regarded as material. The court naturally held that, in the

absence of such a stipulation, the company must show to the court the actual materiality of the statement complained of. We do not think any court in the absence of a modifying statute, has gone to the extent of expunging from a contract, or disregarding in its construction, any statement or item, which the parties distinctly and in terms agreed should be regarded as material, and essential to the contract."

Boyle v. Ins. Co., 95 Wis. 312, was an action brought on a certificate of membership issued by the defendant to Bridget Boyle, the provisions in the application and policy being almost exactly like the provisions of the application and policy in the case at bar, and the same distinction is pointed out between the Jeffries and France cases, and the Moulor case that was pointed out in the Johnson case, *supra.*

The same view is taken of the Moulor case in Weil v. Ins. Co., 47 La. Ann. 1405.

So in Provident Life Soc. v. Llewellyn, 58 Fed. Rep. 942, the court says: "The statements in the application are made part of the contract, and are expressly declared to be warranties, and they are referred to in the body of the policy as agreements." The court says further: "In Moulor v. Ins. Co., 111 U. S. 335, it was held that when there was any reason to doubt the meaning of the contract of insurance, it would be presumed that the statements of the applicant were to be regarded as representations, and not as strict warranties, and the agreement would be presumed to be a warranty only that the answers were made in good faith and true to the knowledge of the insured. In that case, however, the statements were referred to in the body of the policy as representations, and it was held that the terms used in the policy controlled those used in the application. In this case, we do not see any room for doubt or construction. It is impossible to escape the meaning that the statements

were intended to be warranties. Strict construction against the company can not destroy the necessary effect of plain language. Parties have a right to contract in this wise, if they will."

In this case there can be no doubt that the answer of the assured to the questions propounded to him in the application for membership in defendant company, were intended as warranties. It is so stated in the application which is made part of the policy in terms so plain as to leave no room for doubt or construction, and there is no escape from the conclusion that they were so intended.

In the recent case of Farmer against defendant company, 47 S. W. Rep. 850, on the same kind of policy, answers to questions propounded to the assured in his application to the company for insurance were held to be warranties.

It follows that the court erred in refusing to instruct the jury that the answers were warranties and instructing them that they were merely representations.

Moreover, the warranty must have been absolutely true, and if not true the policy will be held to be void, and it makes no difference whether the answers were material to the risk or not. [Ins. Co. v. France, *supra;* Jeffries v. Ins. Co., *supra;* Hanford v. Mass. Ben. Ass'n, *supra;* Whitmore v. Sup. Lodge, *supra;* Mers v. Ins. Co., *supra.*]

It was shown by several physicians who testified on the part of defendant on the trial that the statements made by Aloe in his application for insurance, that he had not consulted or been treated by a physician in thirty years, were untrue. The object of this inquiry suggests itself. If he had not consulted or been treated by a physician during that time that was the end of it. But if he had consulted a physician or been treated by one during that time the defendant had the right to know it, by whom and what for, so that it might ascertain the particulars from him. [U. B. Mutual Aid Society v. O'Hara, 120 Pa. St. 256.]

It has been repeatedly held that such questions called for important information which the assured was bound to give truthfully.   [McCollum v. Ins. Co., 55 Hun. 103; s. c., 124 N. Y. 642; Cobb v. Covenant Mutual Benefit Ass'n, 153 Mass. 176; U. B. Mut. Aid Soc. v. O'Hara, 120 Pa. St. 256; Ins. Co. v. McTague, 49 N. J. L. 587; Cummings v. Ins. Co., 89 Me. 37; Mengel v. Ins. Co. 176 Pa. St. 280.]

In answer to the questions put to him in his application for insurance as to whether or not any proposal by him to insure had ever been postponed or declined, and if so by what company or association, and for what reason, he answered, "Yes, New York and Connecticut Mutual, about six years ago on account of traces of albumen"; while the record discloses that he had been rejected eight times by six companies, while he disclosed but two.

In Ins. Co. v. Raddin, 120 U. S. 189, it is said: "Whether there is other insurance on the same subject, and whether such insurance has been applied for and refused, are material facts, at least when statements regarding them are required by the insurers as part of the basis of the contract."   See, also, Carpenter v. Ins. Co., 16 Pet. 495.

The uncontradicted evidence in this case showed that Aloe applied for insurance in different companies prior to his application in this case by which he had been rejected. That his answer did not disclose the truth, can not be disputed, upon the uncontradicted evidence.   The answer was a warranty and the evidence showed a breach thereof. [Clemans v. Supreme Assembly, 131 N. Y. 485; Edington v. Ins. Co., 77 N. Y. 564; s. c., 100 N. Y. 536; Ins. Co. v. Mahone, 56 Miss. 193; Mutual Benefit Ins. Co. v. Wise, 34 Maryland 597.]

When Aloe was asked with respect to other insurance upon his life he failed to disclose the fact that only a few months before he applied to defendant he had obtained from the Merchants Life Insurance Company a policy on his life

School District ex rel. v. Livers.

for $5,000. This was also a breach of warranty of the contract sued on. "Whether there is other insurance on the same subject, or whether such insurance has been applied for and refused, are material facts, at least when statements regarding them are required by the insured as part of the bias of the contract."

So with respect to answers to questions propounded to him as to whether or not during the last twelve months next preceding the date of his application he had been in good health and free from all diseases, weakness and infirmities, and as to whether he had visited any place for the benefit of, or on account of his health, and as to whether any physician had given an unfavorable opinion on his life with reference to life insurance or otherwise. They were all proven to be untrue.

Our conclusion is that the court committed error in refusing defendant's instruction in the nature of a demurrer to the evidence, and in instructing the jury, upon the theory that the answers of the assured were merely representations, and not warranties.

We therefore reverse the judgment without remanding the cause. GANTT, P. J., and SHERWOOD, J., concur.