THE STATE EX REL. SECURITY BENEFIT ASSOCIATION v. ARGUS COX ET AL., Judges of Springfield Court of Appeals.—9 S. W. (2d) 953

Division Two, October 6, 1928.

*A. W. Fulton, George R. Allen, Irwin & Bushman* and *Ward & Reeves* for relator.

*Von Mayes* for respondents.

HIGBEE, C.—Certiorari to quash the opinion and judgment of the Springfield Court of Appeals in Charles Spencer v. Security Benefit Association, 297 S. W. 989.

On May 11, 1925, in the Circuit Court of Pemiscot County, Charles Spencer sued the relator, a fraternal benefit association, domiciled in the State of Kansas and doing business in Missouri, on two benefit certificates issued to his wife, Birdie A. Spencer, by relator, in which certificates Charles Spencer was beneficiary, to recover $1000 on each of said certificates. The petition is in two counts and in the usual form. The answer averred that the certificates were forfeited for non-payment of dues. The by-laws of the relator and the facts relied on as constituting the suspension of the member were pleaded; that the insured failed to pay her dues on said certificates when they became due on November 1, 1924, or during that month, and was suspended on December 1, 1924; that she paid the dues for November and December, 1924, on December 30, 1924, at a time when she was not in good health, to the local financier who did not report Mrs. Spencer's ill-health to the relator's head office at Topeka, Kansas; that under the by-laws of the association such payment of her dues was a warranty that she was in good health at the time she paid said dues, and it was not the duty of the local officers to learn or report on the condition of her health; that said dues were remitted to the head office on January 8, 1925, and as soon as said office learned Mrs. Spencer was not in good health, the money so paid for her dues was returned to and refused by her.

The plaintiff in his reply pleaded that the local financier to whom said dues were paid had full knowledge of Mrs. Spencer's state of health on December 30, 1924, and relator retained said dues paid by Mrs. Spencer without objection or inquiry as to the state of her health for an unreasonable length of time, which led Mrs. Spencer to believe that payment in time was not essential.

Plaintiff recovered judgment in the trial court, which was affirmed on appeal by the Springfield Court of Appeals. After an unsuccessful motion for rehearing the relator sued out a writ of certiorari to quash the opinion and judgment of the Court of Appeals, as being in conflict with decisions of this court.

I.   We quote from the opinion of the Court of Appeals:

"Wagner v. Security Benefit Association, 276 S. W. (Mo. App.) 81, is a case quite similar to the cause at bar and involved Section 114 of defendant's by-laws. In that case the defense was that the certificate had lapsed because the insured had failed to timely pay her assessment for March, 1921. The March assessment was paid to the local financier on April 7th, and it was contended that at that time the insured was not in good health. It was shown in the Wagner case that during the period insured was a member of defendant association she customarily paid her assessments out of time; that instead of paying them in the month when due she paid them up to as late as the 12th of the succeeding month. The local financier testified that there were about 1600 members of the council and that from 75 to 100 members customarily paid their dues after the end of the month in which the assessments were due. This custom was pleaded in the Wagner case as waiver on the part of defendant of its authority under its by-laws to forfeit the policy or certificate for failure to timely pay the March assessment. It was there held that defendant did waive its right to forfeit the certificate.

"Defendant in its brief in the cause at bar vigorously challenges the correctness of the ruling and conclusion reached by the Kansas City Court of Appeals in the Wagner case and asks us not to follow it. One of the grounds upon which defendant relies to support its contention that no question of waiver or estoppel is involved is its by-law relative to waiver. Defendant's by-law, Section 120a, reads as follows: 'National Council not bound by knowledge of or notice to officers or members of local councils. No officer of this association nor any Local Council officer, or member thereof, is authorized or permitted to waive any provision of the by-laws of this association which relate to the contract between the member and the association, whether the same be now in force, or hereafter enacted. Neither shall any knowledge or information obtained by or notice to any subordinate council or officer or member thereof, or by or to any

other person, be held or construed to be knowledge or notice to the National Council or the officers thereof, until after said information or notice be given in writing to the National Secretary of the association.'

"Section 114 of defendant's by-laws, set out supra, provides that a member suspended for less than sixty days can be reinstated by paying all arrearages, provided the member at the time of such payment is in good health. It is contended that when insured's November assessment was paid on December 30th she was not in good health and that, therefore, she was not eligible for reinstatement and could not be and was not reinstated; and that by Section 120a of its by-laws defendant is not bound by what the local financier did or attempted to do.

"Section 6418, Revised Statutes 1919, provides that the constitution and laws of a fraternal beneficiary society may provide that no subordinate body or the officers or members thereof shall have the power or authority to waive any of the provisions of its laws and constitution, and that such a provision in the laws and constitution of a fraternal beneficiary society shall be binding on beneficiaries and members.

"It is conceded that insured was not in good health on December 30th when her November assessment was paid. The by-laws, Sections 114 and 120a, are plain. So also is the statute, Section 6418. Plaintiff at bar contends that knowledge of facts of waiver as relied upon by him were brought home to defendant's head officers or council and that notwithstanding this knowledge defendant continued to permit the local financier at Hayti to continue her custom of receiving insured's dues and the dues of others out of time and without requiring any evidence of good health. She reported monthly to defendant, giving names of reinstated members, and remitted for the previous month's collections and for collections from delinquents. The local financier made no report on the health of reinstated members, and defendant so far as appears had no by-law or rule requiring such. When a report was received at the head office showing members reinstated such was accepted without inquiry as to the health of the reinstated members. If such a course would not bring home to defendant actual knowledge of the custom relied upon by plaintiff then we cannot conceive how it could be done. The question of defendant's knowledge of this custom and its acquiescence therein for nineteen years is not debatable under the record here. We rule that defendant waived its right to invoke Section 114 of its by-laws to defeat recovery on the certificates sued on in this cause. [Wagner v. Security Benefit Association, supra, l. c. 83, and cases there cited.] [See, also, Britton v. Junior Life Ins. Co., 290 S. W. (Mo. App.) 88.]

"Section 120a does not aid defendant. That section does not prohibit the head officers from waiving by-law provisions, and if it had such provision it would be futile. Anomolous indeed would be a situation, if, by a mere by-law of any kind, a company, insurance or otherwise, could abrogate the law of waiver and estoppel in this or any other state.

"Godwin v. National Council Knights and Ladies of Security, 166 Mo. App. 280, 148 S. W. 980, involved defendant's by-law, Section 114. There the court used appropriate language as follows: 'Section 114 provides that a receipt and retention of unpaid delinquent dues and assessments in case a suspended member is not in good health "shall not have the effect of reinstating such member or entitling him or her beneficiaries to any right under his certificate," whereas, there is no such provision in Section 161. But we hold that such a provision in said by-law is invalid. The defendant has no legal right to receipt and retain delinquent dues and assessments until the member dies and then assert that there was no waiver or forfeiture. It amounts to an assertion of the right, that, if the member was sick and recovered, the forfeiture was waived, but, if he died, the forfeiture was not waived. It was shown that from twenty-five to thirty-five per cent of the members were delinquent in the payment of their dues. It is held "that such a line of conduct on the part of the order and the members, shows that each understands there is a continuous insurance. Otherwise the situation would be that such member would be an insured member at all times, except the time his beneficiary would need it, viz., at his death." [Cline v. Woodmen of the World, 111 Mo. App. 601.] Prompt payment of dues and assessments may be waived by a course of dealing with the insured, notwithstanding the policy provides that no waiver or forfeiture shall be valid unless in writing signed by an officer of the association. [Andre v. Modern Woodmen of America, 102 Mo. App. 377; James v. Insurance Co., 148 Mo. 1. c. 10; Cline v. Woodmen of the World, supra.] And it is there held, in the Andre case, that it would be doing violence to common knowledge and common sense alike to suppose that a benefit society, doing business in every state in the Union, did not know that a large per cent of its members were not prompt in the payment of their dues. And it is held, that with such knowledge, the society waived the delinquencies and received payments within a reasonable time. That defendant did know that the local or its financial agent was receiving the delinquent payments by its members cannot be questioned, and, notwithstanding the by-laws of the order nominated the financier the agent of the members in the receipt of dues and assessments of delinquent members, he became the agent of the defendant by his course of dealing with the defendant.' "

I. It is contended that this ruling is in conflict with the decision of this court in Smith v. Woodmen of the World, 179 Mo. 119, 135, where Judge BURGESS said:

"There was no waiver, therefore, of any condition or requirement of defendant's constitution and by-laws or of the contract of the deceased, through any act of the clerk of the local camp. The acceptance by him of assessments under the circumstances, was compliance with and not a modification or waiver of defendant's law. This being true, it is unnecessary to cite authorities showing that the clerk, under the constitution and by-laws of defendant, was without power or authority to bind the company, or to waive any provision of its law by a course of conduct in accepting the payment of assessments of delinquent members."

In the learned opinion of the Court of Appeals it is held that the course pursued by the local financier brought home to the defendant actual knowledge of the custom relied upon by plaintiff and that "the question of defendant's knowledge of the custom and its acquiescence therein for nineteen years is not debatable under the record here." It is further held that Section 120a does not aid the defendant; that it does not prohibit the head officers from waiving by-law provisions and if it did so provide it would be futile.

It is apparent that the ruling that the head officers of the relator had waived the by-law in question is not in conflict with the ruling in Smith v. Woodmen of the World, supra, that the clerk of the local lodge "was without power or authority to bind the company or to waive any provisions of its law by a course of conduct in accepting the payment of assessments of delinquent members."

II. Relator also contends that "plaintiff's own testimony showed that the information *as to whether a member was sick* when he paid was not transmitted to the home office; that the only persons who knew there was any violation of the by-laws (if in fact there was any violation) were the local officers and members." It is contended that waiver and estoppel based on knowledge of the local officers and members is in conflict with the ruling of this court in Allman v. Order of United Commercial Travelers, 277 Mo. 678, 688, 213 S. W. 429, where it is said: "The constitution of the order provides that no officer, member or agent of any subordinate council can waive any provisions of the constitution of the order relating to insurance. This is a part of the contract sued on and is a valid stipulation."

It is also apparent that the ruling of the respondents that the head officers had "waived its right to invoke Section 114 of its by-laws to defeat recovery on the certificates sued on in this cause," is not in conflict with the ruling in the Allman case.

III. Again, it is contended that "the respondents' opinion permits a waiver upon knowledge of the local officers and does not require the knowledge to be that of the head office, and does not require it to be an intentional relinquishment of a known right by relator, nor require any facts showing an intention on the part of relator to waive and this intention to be shown by clear and unequivocal facts," and it is said that this ruling is in conflict with our decision in Schwab v. Am. Yeomen, 305 Mo. 148, 155, 264 S. W. 690, 692.

At page 155 in the Schwab case, this court said in part:

"A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right there must be a clear, unequivocal and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part. [Citing cases.] . . . It has also been said that in insurance cases the courts are inclined to grasp any circumstances which indicate an election to waive a forfeiture, although insufficient to create a technical estoppel. But even in insurance cases the intention to waive must plainly appear, or else the acts or conduct relied upon as constituting a waiver must involve some element of estoppel."

Relator also cites State ex rel. Ins. Co. v. Trimble, 276 S. W. 1020, 1026, where this court quoted from Langdon v. Kleeman, 278 Mo. 236, 242, 211 S. W. 877, 878: "Although it is evident from the general principles above announced that a waiver may be created by implication, the question as to whether or not it exists in a particular case, being one of intention, must be determined by the facts and circumstances of that case."

The Court of Appeals from the record before it found that the defendant company, the relator here, for nineteen years had actual knowledge of the custom relied on by plaintiff; hence there is no conflict with the cases cited.

IV. Relator insists that the payment of the assessments during suspension was under the by-laws a part of the contract and a warranty that the party paying was in good health, and that the respondents' opinion holding that the relator waived the provision is in conflict with the ruling of this court in Aloe v. Life Association, 147 Mo. 561, 575, 49 S. W. 553. It was there said:

"And where a warranty is a part of a contract it must be strictly complied with. 'It is in the nature of a condition precedent, and no inquiry is allowed into the materiality or immateriality of the fact warranted.' [Mers v. Ins. Co., 68 Mo. 127.]"

The question of waiver does not seem to have been considered in the case cited.

V. The sixth contention, that "if a waiver is held to arise from acts performed by local council officers which are not communicated to or known by national officers, then the object sought to be accomplished by the statute and the by-laws is completely defeated." The learned Court of Appeals based its ruling on a course of conduct by the local financier which was brought home to the knowledge of the head officers and acquiesced in for nineteen years. There is no merit in the contention.

VI. Finally, it is suggested in relator's brief that Kansas has a statute exactly like our statute, Section 6418, Revised Statutes 1919; that the supreme court of that state has ruled that under similar facts there could be no waiver through acts or customs of local officers; that the statutes of the domiciliary state enter into and are a part of every contract of insurance made by the members of a fraternal beneficiary society, whether the contract is made in Kansas or in some other state, and that the "full faith and credit clause" of the Federal Constitution requires the courts of other states to give to the laws of the society the same interpretation as given by the courts of the home state.

So far as the opinion discloses, the questions here suggested were not before or discussed or ruled upon by the Court of Appeals. "But if such question was duly presented, and the court either inadvertently or purposely failed to rule on it, that would be no ground for quashing the record. In this character of proceeding we are concerned only with rulings actually made, either expressly or by necessary implication." [State ex rel. v. Daues (Mo.), 297 S. W. 951, 953 (3).] This court on certiorari will not determine whether the opinion is right or wrong, but only whether it conflicts with its own opinions. [State ex rel. v. Daues (Mo.), 287 S. W. 606, 609.]

Finding no conflict between the opinion of the respondents and any of the rulings of this court called to our attention, we must quash the writ as having been improvidently issued. It is so ordered. *Davis* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion by Higbee, C., is adopted as the opinion of the court. All of the judges concur.