MARIE BAUER, RESPONDENT, v. BEAUTY CULTURIST AND BARBERS' UNION, LOCAL 102, AND JOURNEYMEN BARBERS' INTERNATIONAL UNION OF AMERICA, APPELLANTS.—61 S. W. (2d) 237.

St. Louis Court of Appeals. Opinion filed June 26, 1933.

*Karl Kimmel* for appellant.

*C. P. Schafer* for respondent.

McCULLEN, J.—This is an action brought by respondent, plaintiff below, to collect from appellants, defendants below, a death benefit alleged to be due her as the widow of Ernest A. Bauer, who was a member of the appellant unions. Originally instituted in a justice of the peace court, the cause was appealed to the circuit court, where it was tried by the court without a jury, resulting in a judgment for plaintiff in the sum of $500, the amount sued for, with interest thereon, making a total of $524.16.

Plaintiff's petition alleged that Ernest A. Bauer died on April 19, 1931; that on said date and for many years prior thereto he was a member in good standing of defendant organizations; that all his dues were paid; that plaintiff was his wife and is now his widow; that defendants were and are labor organizations; that upon the death of said Ernest A. Bauer there was due plaintiff, as his widow, the sum of $500, as provided in the constitution and by-laws of defendant organizations; that demand was made upon defendants for the payment of the aforesaid amount and that payment was refused.

Defendants' answer was a general denial.

With commendable fairness and frankness defendants have stated their contention in their brief as follows:

"The only issue that the case presents and upon which it was tried in the justice court and in the circuit court, was whether or not, under the provisions of the constitution of the defendant labor organizations, the deceased was a member in good benefit standing at the time of his death. And that issue is again presented in the appeal to this court."

The evidence discloses that Journeymen Barbers' International Union of America, referred to hereinafter as International Union, is a labor union organized for the purpose, as stated in its constitution, "To promote the human and cultural development of our members and their families." The membership of the order is made up of persons engaged in the trade of barber. Beauty Culturist and Barbers, Union Local 102, hereinafter called Local Union, is a branch of the International Union, and is located in the City of St. Louis. The International Union has approximately 45,000 members throughout the country. The Local Union has about 731 members in the City of St. Louis and vicinity. Applications for membership are made on forms provided by the unions for that purpose. The requirements for membership are that the applicant shall have served an ap-

prenticeship, or have had two years' experience at the barber trade. Death benefits are paid by the International Union through the Local Union. The dues of the members, which, at the time of the death of the deceased were $1.50 per month, are paid by each member to the secretary of the Local Union. A part of these dues are kept by the Local Union and a part thereof, eighty cents per month per member, is sent to the International Union as a per capita tax. Under section 28 of the constitution of the International Union a portion of the per capita tax, namely, forty-five cents per month, per member, goes to make up the sick and death benefit fund from which sick and death benefits are paid. The per capita tax of eighty cents per month per member, is transmitted by the secretary of the Local Union to the International Union each month. When an applicant is received into membership, he is a member of the Local Union and of the International Union. He is given a membership book containing a copy of the constitution of the International Union. Anyone applying for membership is required to sign the form of application furnished by the unions containing a number of questions to be answered by the applicant. The applicant is required to state therein that he is willing, at all times, to comply with and abide by the laws of the International or Local Union.

Section 39 of the constitution provides that if, at the time of a member's sickness, or death, he shall be in default of any obligations imposed by the constitution, he shall not be entitled to sick or death benefits.

Section 44 provides that:

"Any member who is debarred from benefits by the nonpayment of dues cannot, by paying same, be entitled to benefits for a sickness commencing before the dues were paid. A member, to be entitled to sick and death benefits, shall pay dues on or before the first day of the month for which they are due. . . . No acceptance of dues by the local after their due date, regardless of habit or custom to the contrary, shall ever be deemed a waiver of the foregoing provision."

Section 131 provides that:

"Every active beneficiary member must pay to his local union not less than $1.50 per month, and it shall be the absolute duty of said member to see that the secretary receives the dues on or before the first day of the month for which they are due, . . . No member shall be entitled to benefits unless dues are paid as herein provided for, notwithstanding any custom to the contrary that may be followed in any local union. . . . The acceptance of dues by the local after the date on which the same become due shall not, in spite of any custom or habit to the contrary, be deemed a waiver of the requirement to pay dues on or before the first day of the month and shall in no event entitle such member to sick or death benefits and

such dues paid after they have become delinquent shall be deemed to have been accepted merely for the purpose of enabling the member to place himself in good standing at a future time. . . ."

Deceased became a member of the Local Union in 1912, and thereby also became a member of the International Union. The evidence is undisputed that he was continuously a member from 1912 until the time of his death in April, 1931. It thus appears that he was a member covering a period of almost nineteen years, and that he paid dues for each month during that entire period, including the month of April, 1931. He died on April 19, 1931.

The evidence is undisputed that a number of times prior to April, 1931, deceased paid his dues to the secretary of the Local Union for a particular month after the first of such month; that the dues were accepted by the local secretary without objection and the per capita tax thereon, including the forty-five cents for the sick and death benefit fund, was always accepted by the International Union without objection.

The secretary of the Local Union testified that the portion of the dues of the members to be sent to the International Union each month was not required to be sent until the 25th of the month for which the dues were paid. He said that the dues for the month of April, 1931, were paid by the deceased on April 3, 1931, and that the per capita tax, which included forty-five cents for the sick and death benefit fund for each member who paid during April, 1931, was not transmitted to the International Union until the 22nd or 23rd of April, 1931. He knew of the death of deceased when he forwarded the per capita tax for that month.

It is undisputed that it is customary for a large number of the members (forty to fifty) to fail to pay their dues on or before the first of each month; that their dues are accepted at later dates in the month and sent by the secretary of the Local Union to the International Union, where they are received and accepted without objection.

It is also undisputed that the Local Union secretary frequently sends per capita tax to the International Union for members who have not paid their dues to him at the time he forwards the per capita tax.

Defendants contend that inasmuch as the deceased did not pay his dues for the month of April, 1931, until April 3, 1931, his widow is not entitled to any benefit because the dues were paid two days late; that under the laws of the organization, particularly sections 39, 44 and 131, which we have in part set out above, he was not, at the time of his death, a member in good benefit standing. Defendants lay great stress on the fact that they are not insurance corporations; that they do not issue policies or certificates of insurance; that they are labor organizations formed for the purpose of the mutual pro-

tection of their members while living, and not for the protection of their families after their death; that they are not engaged in the business of insurance and that, therefore, the laws applicable to insurance companies are not applicable to them.

Regardless of the nature of defendant organizations, the evidence shows that there subsisted between them and the deceased, mutual obligations in the nature of an insurance contract. This is shown by the provision for a sick and death benefit fund which is made up from the dues of the members, and the provision in section 49 of defendants' constitution, that upon the death of a member who is in benefit standing and "has been a continuous contributing member to the International Union," death benefits shall be paid in various amounts ranging from $100 up to $500, depending upon the length of time of the membership. Upon the death of members in good standing who have been continuous contributing members more than fifteen years, it is provided that the death benefit shall be $500.

On its main facts the case at bar is similar to the case of Bruns v. Milk Wagon Drivers' Union, Local 603 (Mo. App.), 242 S. W. 419. In that case a suit was brought to recover a death benefit alleged to be due from the defendant organization on account of the death of a member. It was alleged therein that all of the dues of the member were paid and that he was in good standing on the date of his death, which occurred on October 31, 1918; that defendant was a labor organization; that upon the death of the deceased there was due plaintiff, father of the deceased, the sum of $500, as provided in the constitution and by-laws of the defendant organization. The evidence in that case showed that the by-laws of the organization provided that the monthly dues must be paid in advance on or before the fourth Thursday in the month, and if not paid in accordance therewith, no sick, accident or death benefit would be allowed. Another provision of the by-laws of the defendant organization in that case provided that members must be in continuous good standing three months prior to sickness, accident or death before benefits would be paid. It was contended by the defendant therein that because the dues of deceased had not been paid on or before the date they were due in each of the three months preceding his death, he was not, under its laws, a member in good standing at the time of his death although the dues were paid on the proper date in the month that he died, for that month. The court said:

"The principal defense, however, as disclosed by this record, and which defendant sought to invoke in the court below to relieve it from liability was that, as the by-laws required the dues to be paid in advance on or before the fourth Thursday in each month, and the deceased did not pay such dues in advance, plaintiffs would be precluded from receiving any death benefits. This contention cannot

be upheld. According to the testimony of defendant's secretary-treasurer, this provision was clearly waived by defendant. It could not accept the dues of deceased (and it is admitted that his dues were always paid, and were fully paid at the time of his death), and then deny liability on the ground that such dues were not paid promptly. It would be a rather novel, or even unreasonable, position for defendant to take, by saying that it received as much money from deceased as it did from any other member who belonged to it, but yet it would not be liable for any death benefits, because deceased did not pay the money at the same time others paid it. Defendant always accepted the dues and assessments of deceased, and never undertook to forfeit his insurance, nor made any protest, and would therefore be precluded from successfully invoking such defense now.''

We believe this case comes clearly within the doctrine set forth in the above mentioned Bruns case. [See also Glenn v. Security Benefit Ass'n (Mo. App.), 253 S. W. 802.]

There is another reason why defendants in this case should not be heard to say that deceased was not in good standing at the time of his death. The evidence shows that the International Union retained its portion of the dues paid by the deceased on April 3, 1931, for the month of April, 1931, and that no part thereof has been tendered to plaintiff either by the Local Union, or the International Union.

In Godwin v. National Council K. & L. of S., 166 Mo. App. 289, 148 S. W. 980, it was said:

''The defendant has no legal right to receipt and retain delinquent dues and assessments until the member dies and then assert that there was no waiver of forfeiture. It amounts to an assertion of the right, that, if the member was sick and recovered, the forfeiture was waived, but, if he died, the forfeiture was no waived.''

The court further declared that to hold otherwise:

''The situation would be that such member would be an insured member at all times, except the time his beneficiary would need it, viz., at his death.''

The fact that the defendants herein are not engaged in the business of insurance for profit does not exempt them from the doctrine of waiver. Our Supreme Court has said:

''It will at once be observed that it is not contended, and is not true, that the doctrine of waiver is applied to insurance companies and their contracts, and is not applied to individuals or other companies and their contracts. For the fact is, that the doctrine and principle of waiver is applied to all persons and companies alike.'' [Andrus v. Insurance Association, 168 Mo. 151, 67 S. W. 582; Ash-Grove L. & P. Cement Co. v. Southern Surety Co., 225 Mo. App. 712, 39 S. W. (2d) 434.]

Defendants contend that there is an element in the case at bar which distinguishes it from the case of Bruns v. Milk Wagon Drivers'

Union, supra, namely, the law of defendants which specifically provides against waiver of the requirement that dues must be paid on the first of the month. It is urged that their law provides that acceptance of dues after the first of the month is only for the purpose of placing the member in good standing at some future time. It is pointed out that no such provision appeared in the above mentioned Bruns case.

Notwithstanding the provision against waiver, we believe the course of conduct by defendants was sufficient to justify the court in finding that defendants did waive the requirement of their laws as to the payment of dues on the first of each month.

In James v. Mutual Reserve Fund Life Ass'n, 148 Mo. 1, 49 S. W. 978, there was a specific provision in the policy of insurance that:

"No contract, alteration or discharge of contract, waiver of forfeiture, nor granting or permits or credits shall be valid unless the same shall be in writing, signed by the president ·or vice-president and one other officer of the association."

The policy in that case further provided that the premiums thereon should be paid on or before a prescribed date, and if not so paid it would be void. In the face of these specific provisions, our Supreme Court held that the requirement of prompt payment could be waived by the course of conduct of the defendant therein, and the question whether or not they were waived, was one for the jury; that the jury, having found in favor of plaintiff, the verdict would not be disturbed on that ground. [See also State ex rel. Benefit Ass'n v. Cox, 321 Mo. 130, 9 S. W. (2d) 953.]

In the case at bar the court, sitting as a jury, found the issues for plaintiff, and there being substantial evidence to support the action of the court, there is no reason for our interference. The judgment is affirmed. *Becker, P. J.*, and *Kane, J.*, concur.