LEAH ALLMAN v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Appellant.

Division One, April 7, 1919.

1. **BENEFIT INSURANCE: Death: Failure to Give Notice: Knowledge of Subordinate Lodge.** Where the constitution of a fraternal beneficiary society, which, by express statute (Sec. 9, p. 286, Laws 1911) and the agreement of the parties to the benefit certificate, is made a part of the insurance contract, explicitly provides that, in case of death, notice thereof shall be given within ten days to the supreme secretary of the order, and also explicitly provides that knowledge or information of members and officers of local councils shall not be held or construed to be knowledge of or notice to the order, a failure to give such notice within the time stipulated bars recovery on the certificate, unless waived. Such stipulations are within the power of the society to make, and by the express terms of the statute are binding, and the time is not unreasonable. Knowledge of the subordinate lodge, under whose auspices the insured's funeral was conducted, is not notice to the supreme secretary.

2. ———: ———: ———: **Forfeiture.** Unambiguous language in an insurance contract that failure to give notice of the insured's death within a designated time shall work a forfeiture is enforceable.

3. ———: ———: ———: **Waiver.** If the constitution of the fraternal beneficiary society provides that no officer, member or agent of a subordinate lodge can waive any of its provisions, and this provision is a part of the contract, attendance upon the insured's funeral by the members of the local council, and a letter written by his beneficiary to the secretary-treasurer of said council in which she thanked the members for their kindness at the time of her husband's death, did not constitute a waiver of the notice.

4. ———: ———: ———: ———: **Sending Blanks.** The mere sending of blanks for proof of claim does not constitute waiver of the requirement for notice of the insured's death. Where the beneficiary, after the time in which notice of the insured's death was required by the contract to be given had expired, wrote to the proper officer for blanks for proof of her claim, and blanks having printed across the top: "In sending this blank the order does not waive any provision of the constitution, but expressly reserves the same" were sent to her, and all she thereafter did was to write in the blanks answers to inquiries therein contained, going to no expense and being in no wise misled to her prejudice, there was no element of estoppel, and no waiver.

5. ———: ———: ———: ———: **Correspondence Between Officers.** A letter voluntarily written by the secretary-treasurer of the local lodge to the supreme surgeon of the order concerning a death claim, and the surgeon's answer thereto that "the disposition of the claim will be held in abeyance until after the next supreme council meeting," written long after notice of death was due, contain no element of estoppel or waiver..

6. ———: ———: ———: ———: **Collecting Evidence of Defense.** The act of the secretary of the local lodge and the attorney for the supreme lodge in calling upon the beneficiary after suit has been brought by her and obtaining from her an affidavit containing statements of the claim and proof of death, even if done in an attempt to collect evidence for the defense, does not constitute waiver of notice or estoppel.

7. ———: ———: ———: ———: **Offer of Compromise.** A mere offer of compromise by the defendant after suit was brought, with nothing more, does not tend to prove waiver of notice.

8. ———: ———: ———: ———: **Autopsy.** In a suit on a benefit certificate against injury or death by accident, where the death certificate contains a statement that the insured died with neuralgia of the heart, and the contract expressly provides for an autopsy in proper circumstances, and one of the questions of fact

in the case is whether he came to his death from the effects of his accidental injury, an autopsy, applied for in proper time and circumstances, is a reasonable method of enabling the order to prepare for trial on said defense, and a demand therefor does not imply waiver of notice of death or accident.

9. ———: ———: ———: ———: **Forfeiture: Abandonment.** A denial of liability, after forfeiture and after suit brought, which does not place denial on a ground or grounds other than forfeiture, but is general and asserts reliance on the provision of the constitution of the order, which by the certificate and the statute are made a part of the contract, does not justify an inference of abandonment of the forfeiture for failure to give notice of death within the time stipulated, and nothing having been done by the beneficiary upon the faith of the denial, to her expense or prejudice, the denial embraces no element of estoppel or waiver.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,* Judge.

REVERSED.

*George Hubbert, M. E. Benton* and *Fred G. Hubbert* for appellant.

(1) Performance of the contractual conditions requiring two notices, one from the member concerning the accident and an additional one from the beneficiary, each within a limited time fixed, with proofs of death's sole and independent cause, for submission in a given time to decision in the order by the appointed deciding committee, and of the further condition of consent to be given and procured by the beneficiary on request for autopsy, were each and all essential parts of respondent's case. The absence of any one of such conditions necessarily must defeat the action. Not one of them is found fulfilled in this record. There is nothing to support the verdict and judgment. Trav. Ins. Co. v. Nix, 142 Fed. 653; Westerman v. Sup. Lodge, 196 Mo. 738; Claudy v. Royal League, 259 Mo. 107; 2 Bacon Ben. Soc. (3 Ed.) sec. 460; Galvin v. Knights of F. M., 169 Mo. App. 469; Haynie v. Knights Templars Indem. Co., 139 Mo. 416; Norton v. Cath. Ord. of Foresters, 114 N. W.

893; Burchard v. Western Coml. Trav. Assn, 139 Mo. App. 621; Boyce v. Royal, 99 Mo. App. 349; Brittenham v. Sovereign Camp, 180 Mo. App. 534. (2) The required and specified time notices are vital to the contract and are inerasable conditions, and the proof of them properly rests upon respondent in order to recover. Niblack on Benefit Societies, sec. 415; Travelers' Ins. Co. v. Meyers & Co., 49 L. R. A. 760; Meech v. Nat. Acc. Soc., 63 N. Y. Supp. 1008, 50 App. Div. 144; Natl. Pap. Box Co. v. Aetna Life Ins. Co., 170 Mo. App. 361; Hoffman v. Mfg. Accident Co., 56 Mo. App. 310; Whittemore v. Sells, 76 Mo. App. 248; Hayes v. Continental Casualty Co., 98 Mo. App. 410; James v. Casualty Co., 113 Mo. App. 622; Baumister v. Casualty Co., 124 Mo. App. 38; McFarland v. Accident Assn., 124 Mo. 215. (3) The breach of the condition that the beneficiary should give and procure consent to the holding of an autopsy and examination of her husband's remains bars her recovery as an essential and unmoveable barrier. This under the same fundamental principle and constitutional guaranties applicable to other unfulfilled conditions precedent. Loesch v. Surety Co., 176 Mo. 654; Brittenham v. W. O. W., 180 Mo. App. 535; Holmes v. Tyson, 147 Pa. 3051, 15 L. R. A. 209; Condun v. Mutual Reserve L. Assn., 44 L. R. A. 149; Carr v. Pacific Mut. L. Ins. Co., 100 Mo. App. 602; Shader v. Pass Assn., 66 N. Y. 441, 23 Am. Rep. 65. (4) There is no competent evidence of any waivers of the essential conditions of recovery under the insurance agreement, neither by intention of respondent nor by acts of its authorized agent, member, officer or body; nor are there any grounds of estoppel shown against any required performances of such conditions. The rulings and instructions of the court, allowing the jury to overturn such conditions, are grievous errors, and violative of fundamental law. Other instructions in proper form cannot be regarded as having cured this error. U. S. Const., Articles 5 and 14 of Amendments; Mo. Const. art. 2, secs. 10, 20 and 30; Laws 1911, p. 292, sec. 22; Davis v. National Council, 196 S. W. (Mo. App.) 97; Galvin

v. Knights of F. M., 169 Mo. App. 508; Hollard v. Tyler, 11 Ind. 121; Ramsey v. General Accident Co., 160 Mo. App. 236; Brittenham v. Sovereign Camp, 180 Mo. App. 537; Wintergast v. Court of Honor, 185 Mo. App. 373; Loesch v. Union C. & S. Co., 176 Mo. 654; Day v. Supreme Council, 174 Mo. App. 260; Clair v. Royal Arcanum, 172 Mo. App. 109; Chandler v. Ins. Co., 180 Mo. App. 394; Lesser v. St. L. & S. F. Ry. Co., 85 Mo. 335; Myers v. Maryland Casualty Co., 123 Mo. App. 687; Dezell v. Fidelity Co., 176 Mo. 253; Griffith v. Supreme Council, Royal Arcanum, 182 Mo. App. 644; Meech v Natl. Acc. Soc., 63 N. Y. S. 1008; Travelers Ins. Co. v. Nix, 142 Fed. 653.

*Humphrey, Boxley & Reeves,* for respondent; *Haywood Scott* of counsel.

(1) "The beneficiary, until the death of the insured, had, at most, only an inchoate and contingent interest in the policy. The insurer could not, until that event occurred, recognize her as a party to the contract having a present interest therein. She could have no claim under the contract until the death of the insured and therefore she could give no notice of the accident or injury until that event occurred." Crotty v. Casualty Co., 163 Mo. App. 637; Hoffman v. Accident Co., 56 Mo. App. 306. (2) Even if plaintiff did not notify appellant within the period stipulated in the contract, appellant by its course of dealing waived its right to declare a forfeiture. (a) According to the insurance contract "if death shall result under the conditions covered by this article a notice of said death must be given in writing to the supreme secretary within ten days after said death." (b) According to the testimony, the local organization where the assured paid all his dues and premiums officiated at his funeral, and on March 19, 1914, Gettings, as secretary and treasurer of Neosho council, wrote Mrs. Allman in relation to the death of her husband. Subsequently, the appellant, under date of April 6, 1914, acknowledged receipt of notice of

death from respondent, forwarded proof blanks and requested particulars of the death, and neither then nor thereafter did appellant complain that notice had not been timely given. In fact appellant attempted to settle the claim, and C. M. Taylor, authorized representative, called on respondent, telling her he had "currency" in his pocket with which to settle, and at no time did appellant complain of any defect in the notice of death. Even when respondent refused to accept the "currency" from C. M. Taylor, "authorized representative," eight months after the death, because the amount was inadequate, Taylor never mentioned defect in notice of death, but instantly as a terrifying influence, demanded and was accorded the right to hold an autopsy. Afterwards appellant denied liability or rejected the claim, but did not do so on the grounds that the notice of death was out in time. Authorized representatives, such as Gettings, secretary and treasurer for appellant at Neosho, and Mr. Hubbert, one of the attorneys in this case, obtained certain affidavits from plaintiff for appellant, and these were received and used by appellant as a basis of its consideration of the claim. It was not disputed that Gettings and Hubbert were acting for appellant, and while both of these men were in court during the trial they were not called to deny their authority or that they were acting for appellant. (c) "No one can doubt that the purpose of the notice required by this provision of the policy is to advise defendant of the probable claim to be presented and afford it an opportunity for investigation thereabout. It appears that though defendant's general agent denied all liability on the policy at the time the notice was served, September 20, it nevertheless sent its adjuster, Mr. Carroll, to investigate and settle the claim a few weeks thereafter . . . At most the failure to give the notice authorized defendant to declare a forfeiture of the claim under the policy for that cause. The provision as to such forfeiture was for defendant's benefit and could be waived by it if it saw fit to do so. Defendant knew its rights in the premises and it first asserted them to the

effect above stated. A waiver is the intentional abandonment or relinquishment of a known right, and the intention to do so is the essential element involved. Francis v. A. O. U. W., 150 Mo. App. 347. Obviously the court was authorized to find from the facts above set forth that defendant intended to and did waive the right of forfeiture on the ground that notice was not given within a reasonable time, for this matter seems to have been abandoned entirely by the adjuster. A waiver once attached may not be thereafter recalled." Bell v. Mo. State Life Ins. Co., 166 Mo. App. 390. There is an abundance in the evidence to support the finding on the grounds of a waiver. Myers v. Casualty Co., 123 Mo. App. 682; Crenshaw v. Pac. Mutual Life Ins. Co., 63 Mo. App. 678; Brix v. Fidelity Co., 171 Mo. App. 524; Mining & Milling Co. v. Fire Ins. Co., 267 Mo. 604; Thompson v. M. B. A., 189 Mo. App. ——.

BLAIR, P. J.—This is an appeal from a judgment for $8601.67 in an action respondent brought upon a benefit certificate issued upon the life of her husband by appellant, a fraternal beneficiary society.

The evidence showed respondent's husband joined appellant order December 5, 1913, was accidentally injured on March 1, 1914, and died on March 12, 1914. Appellant earnestly contends (1) there is no evidence the injury was the cause of death; (2) that, at most, it conclusively appears the injury was not the sole cause of death; (3) that on several grounds, all rights under the certificate were forfeited; and (4) that numerous errors occurred at the trial. The question whether forfeitures were waived is the basis of one of the principal controversies in the case.

The benefit certificate sued on and the applicable statute . (Sec. 9, p. 286, Laws 1911) provide that the certificate, the articles of incorporation, the constitution and by-laws of the society and the application on which the certificate was issued shall constitute the contract between the society and the insured member. The provisions of appellant's constitution relating to notice

and waiver are endorsed on the benefit certificate, and are as follows:

"Any insured member who shall sustain an accident covered by this article shall, within ten days after the date of such accident, send a notice in writing of said accident (not the results) to the supreme secretary, stating his full name and address, and full particulars of his accident. After the receipt of notice of any accident, as above provided, the supreme secretary shall, within five days, forward or present to the claimant, beneficiary or attending physician, blanks for the preliminary proof of the accident. Within fifteen days after said blanks shall be forwarded by the supreme secretary, the claimant shall return to the supreme secretary, upon said blanks, preliminary proof of the accidental injuries, setting forth the date and description of the same, together with the report of the attending physician. Whenever deemed advisable the supreme secretary may forward or present blanks to the claimant for final proof, and within fifteen days after the loss of time has terminated or the loss of one or both eyes, or one or both upper or lower extremities, has occurred, the claimant shall forward to the secretary-treasurer of his subordinate council, said proofs, which shall consist of a final report, signed by the claimant and sworn to before any officer authorized to administer oaths, and a statement of the attending physician. If deemed advisable the claimant may be required to furnish additional reports and additional medical reports.

"If death shall result under the conditions covered by this article, a notice of said death must be given in writing to the supreme secretary within ten days after said death, which death notice shall be in addition to the notice of the accident and shall state the cause of death.

"Upon receipt of notice of a death as above provided the supreme secretary shall, within thirty days, forward or present to the beneficiary or attending physician blanks for proof of the same, and said beneficiary

or attending physician shall return to said supreme secretary such proofs upon said blanks within thirty days from the time the same shall have been forwarded or presented, together with a certified copy of the coroner's inquest, if one has been held. If deemed advisable the claimant may be required to furnish additional reports and additional medical reports.

"The forwarding of blanks for the purpose of proofs as above provided, or the investigation of any claim by a member or officer of the order or anyone authorized to represent the order, or the holding of any autopsy by anyone representing the order, shall not constitute or be a waiver of any right or of any defense which the order may have against any claim made against it, and the making of proofs or filing of notices shall be at claimant's expense.

"Any failure to give or furnish the notices, preliminary proof or final proofs, as hereinbefore required, each within the time limited therefor, shall be deemed a waiver of any and all claims against the order and said claim shall be deemed forfeited by said failure.

"No knowledge or information obtained by or furnished to any officer or member of any subordinate, grand or supreme council of the order, except the supreme secretary of the order, shall be held or construed to be knowledge of or notice to the order. . . . .

"No officer, member or agent of any subordinate, grand, or the supreme council of this order is authorized or permitted to waive any of the provisions of the constitution of this order relating to insurance as the same are now in force or may be hereafter enacted."

The accident which respondent claims and the jury found resulted in Allman's death, occurred on March 1, 1914. Its immediate effects were several minutes of unconsciousness and a considerable shock. Beyond this it did not materially interfere with Allman's performance of his duties as a traveling salesman between March 1, 1914, and the night of March 11, 1914. He covered his usual route during this time. There was some evidence of soreness in the left side and arms,

and headaches. During this period neither he nor anyone gave appellant or anyone connected with it any notice of the accident. On the night of March 11, 1914, Allman was seized with severe pain and died in convulsions, at Rodgers, Arkansas, on the morning of March 12, 1914. The attending physicians on the same day filed with the local registrar of vital statistics a certificate of death in which it was stated Allman died from neuralgia of the heart.

Upon the evidence concerning what happened subsequently, questions of forfeiture and waiver are raised. This evidence will be set forth more fully in the opinion.

I. (a) The funeral of Allman was conducted by the members of the Neosho subordinate council of appellant, of which local council Allman was a member. On March 18, 1914, respondent wrote Gettings, secretary-treasurer of the Neosho subordinate council, expressing appreciation of the council's kindness to her and the "honor they have shown my husband in death." No notice of any kind of the original accident was sent to anyone during the ten days immediately following March 1, 1914, and, excepting the letter from respondent to Gettings, neither respondent nor anyone for her communicated with anyone connected with the order until considerably more than ten days after Allman's death.

On this phase of the case appellant contends a forfeiture resulted (1) from the failure to give notice within ten days after the happening of the accident on March first, and (2) from failure to give notice **Notice.** of death within ten days after death occurred. In the view we take of the case it is not necessary to discuss the first proposition.

Respondent in her brief very properly concedes "that the supreme office of appellant was not notified of the death within the ten-day period." The record has nothing in it to justify any other position. Respondent suggests, on the other hand, that officers of the

Neosho subordinate council were present at Allman's funeral, and adds that it was "not seriously disputed that these same officers . . . were clothed with authority to receive notice of death."

The constitution of the order, which, by express statute (Sec. 9, p. 286, Laws 1911) and the agreement of the parties to the benefit certificate, is a part of the contract sued on in this case, explicitly provides that, in case of death, notice thereof shall be given to the supreme secretary of the order within ten days, and as explicitly provides that knowledge or information of members and officers of local councils shall not be "held or construed to be knowledge of or notice to the order." These stipulations it was within the power of the parties to make and, by express statute (supra), bind respondent. Since they have been made by the parties, this court has no power to exscind them or hold that their violation is no violation of the contract. [2 Bacon on Benefit Societies, secs. 568, 573.] There is no suggestion in the record or briefs that failure to give the requisite notice was due to any fact or condition constituting a legal excuse therefor, and the authorities are quite uniform that a provision for notice within ten days is not an unreasonable requirement.

Appellant's counsel made the point throughout the case and consistently insisted that evidence of knowledge by members of the subordinate council was inadmissible. There is no escape from the conclusion that there is not a scintilla of evidence tending to show compliance with the requirement concerning notice.

(b) By the contract itself it is provided that the failure to give the notice required thereby shall work an immediate forfeiture. There is no ambiguity in the language. The parties had the power to give this effect to the violation of the provision for notice; and since they have given it this effect, this court can no more strike this stipulation from the contract than it could insert it had the

Forfeiture.

parties omitted it. [Dezell v. Fidelity & Casualty Co., 176 Mo. 1. c. 281.]

II. The principal question is, whether the forfeiture was waived.

(a) The constitution of the order provides that no officer, member or agent of any subordinate council can waive any provisions of the constitution of the order relating to insurance. This is a part of the contract sued on and is a valid stipulation. [Sec. 22, Laws 1911, p. 292; Brittenham v. W. O. W., 180 Mo. App. 1. c. 534.] It follows that neither the evidence of the attendance of members of the local council at Allman's funeral nor Gettings' letter to respondent was competent upon the question of waiver.

*Knowledge of Local Lodge.*

(b) March 31, 1914, respondent wrote the supreme secretary of appellant order, stating the fact and date of her husband's death and requesting the secretary to send her blanks for proof of claim. This was received by appellant April 2, 1914. In reply the blank was sent and respondent was asked to "please write such particulars of the death as you possess." The blank enclosed bore on its face and across its top these words: "In sending this blank this order does not waive any provision of the constitution, but expressly reserves the same." Upon this blank respondent wrote a statement wherein she gave her husband's name, name of the subordinate council of which he had been a member, date and manner of injury and its effects, date and place of death and name of attending physician. She went to no expense and took no further steps until she began this action.

*Waiver.*

The blank was neither requested nor sent during the currency of the period during which notice might have been given under the contract. The constitution provides that sending blanks shall not constitute waiver. The blanks conclusively show absence of any intent to waive the forfeiture, and respondent was not in any

277 Mo. Sup.—44

way misled to her prejudice; no element of estoppel appears. The mere sending of the blanks at respondent's request does not tend to prove waiver. [Loesch v. Union Casualty & Surety Co., 176 Mo. l. c. 666; Boren v. Brotherhood, 145 Mo. App. l. c. 137; Chandler v. Insurance Co., 180 Mo. App. l. c. 400; Shearlock v. Insurance Co., 193 Mo. App. l. c. 438; Ridgeway v. M. W. A., 98 Kan. 241, L. R. A. 1917A, p. 1062 and note.]

(c) June 18, 1914, Gettings, secretary-treasurer of Neosho council, transmitted to respondent a letter written him by the supreme surgeon of appellant under Correspondence date of June 15, 1914. This showed Get-Between Officers. tings had written the order under date of May 26, 1914, in regard to the Allman claim. It stated that "the matter of the disposition of this claim will be held in abeyance until after the supreme council meeting, owing to rush of business at the time of our annual meeting. Trusting the above answers," etc. The annual meeting was held on the 4th Tuesday in June of each year. This letter of the supreme surgeon contains nothing which has in it any element of waiver or estoppel. It was not written to respondent. There is no contention Gettings was directed or authorized to transmit it to respondent, or that his inquiry was made for her or at her suggestion. What it means is that the question was not yet passed upon. Respondent did nothing on the faith of the letter. It has no probative force on this issue.

(d)    The next thing in chronological order was the institution of this action on September 11, 1914. On October 5th Gettings and an attorney called upon respondent and, according to her testimony, Collecting said to her: "We want to get the proof Evidence and want you to give the affidavit of what for Defense. you know." She said neither of them made any other statement to her. On cross-examination she said Gettings asked her if she was willing to make an affidavit of what she knew. She assented. Gettings had the affidavit drawn, and she found it correct and

swore to it. He had asked her as to the facts. It was substantially like the statement she had previously sent the order. She was put to no expense. She testified that at the same time and place Dr. Fulkerson made an affidavit. He had made none previously. (His affidavit covered the results of an examination he had made of Allman November 23, 1919). This was after suit brought. It does not appear that Gettings or the attorney had any authority from the order. The attorney was not then employed in this case. What Gettings did on his own motion and what the attorney did at his instance, for reasons already given, are not evidence of waiver. Further, even had the order attempted to collect evidence for its defense this would not, in the circumstances shown in this case, have been evidence of waiver or estoppel.     This court has held (Dezell v. Fidelity & Casualty Co., 176 Mo. l. c. 264 et seq.) that an insurance company does not waive the defense of lack of notice by joining with it in its anwer a denial of liability or any other valid and legally consistent plea, and this ruling would be an absurdity if it is to be held that, though such company may plead such other defense without waiver, it cannot prepare to establish it except under the penalty of waiver.

(e) After suit was begun and, it seems, some time in October after the affidavits mentioned in the previous paragraph (d) were made, Dr. Taylor, supreme surgeon of appellant order, came to respondent's home, and, according to her testimony, told her he was

**Compromise.** "an adjuster" of the order; said "that the boys wanted to help me and that he had money in his pocket for me if I would receive it. I told Dr. Taylor if he compromised the case that day it would be for the full amount, and he got up and said: 'Very well, if you want to fight this case, why, I shall proceed to have an autopsy held over the body of your husband.' I said, 'All right.' " He asked where he could get a stenographer and was told, and then left and respondent saw him no more until the day of trial. On cross-exam-

ination she said she understood Taylor was talking about settling the suit; that he wanted her to stop the suit; that in saying to her that "the boys wanted to help" her, Taylor had reference to the Neosho council; that he didn't propose to pay anything on behalf of appellant order. Respondent's testimony thus demonstrates that Taylor was merely trying to settle or compromise the pending action and that the offer of money he made was not an offer from appellant, but an offer in behalf of the local council at Neosho. There is nothing in this incident tending to prove waiver, and respondent herself testifies, in effect, the offer of money was not made at the instance of appellant. If it had been, there is nothing in a mere offer of compromise, with nothing more, which tends to prove waiver in this case.

(f) A formal demand for an autopsy was subsequently made. It was a demand appellant had a right to make, in proper circumstances, in furtherance of its preparation for trial. The constitution expressly provides such demand may be made and that any refusal to comply shall forfeit the claim under the certificate. One question in this case is, whether the demand was refused and all rights under the certificate forfeited for that reason. In view of the statement in the death certificate that Allman died of neuralgia of the heart and of the very reasonable doubt upon the question whether Allman died from the effects of his accidental injury, an autopsy would seem, if applied for in proper time and circumstances, to have been a reasonable method of aiding the solution of one of the chief issues of fact in this case. Appellant had the right to prepare for trial on all defenses. The action had been begun. There is no claim anything was said or written or done in connection with this demand which implied a waiver of anything or that respondent took any action of any kind as a result of this demand except that her attorney rejected it.

*Autopsy.*

(g) On November 3, 1914, respondent's then counsel wrote Dr. Taylor, stating he had advised that "it is absolutely useless to negotitate or even confer with you or other representatives of your association, and therefore all such negotiations are now and shall be concluded except that you will pay the amount sued for."

Abandonment.

November 19, 1914, appellant wrote respondent announcing the rejection, of the claim by appellant's supreme council, and stating "that the claim was disallowed for constitutional reasons. We believe it is unnecessary to specify the reasons for the disallowance item by item as the specifications will be set forth by our chief attorney in due time." The letter tendered the proofs, etc., respondent had furnished, and offered to forward them as soon as respondent advised the manner of return. It also stated that respondent's attorney's letter and the registry receipt signed by the respondent showing receipt of request for autopsy were in appellant's possession.

The denial of liability came after forfeiture and after suit brought. It did not place that denial exclusively on a ground or grounds other than forfeiture. It was general and asserted reliance on the provisions of the constitution of the order. One provision of the constitution was that for notice and another was for forfeiture in case of failure to give notice. The letter contains no implication that the claim is rejected on any ground which would justify an inference of abandonment of the forfeiture for failure to give notice. It was not written during the currency of the period for giving notice, but after forfeiture, and there is no suggestion that anything was done by respondent upon the faith of any belief, engendered by this letter, that caused her expense or prejudiced her in any way.

III. Though full effect be given to the most stringent rules applicable against a claim of forfeiture, and though the most liberal rules be applied in considering

**Conclusion.** respondent's evidence offered to show waiver or estoppel, it is not possible on this record to hold otherwise than that this judgment cannot stand. There is a conclusive showing that respondent is not entitled to recover. Judgment reversed.

All concur except *Bond, J.,* not sitting.