OSCAR WENOM, Respondent, v. NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY, Appellant.

St. Louis Court of Appeals. Opinion Filed July 29, 1920.

INSURANCE: Fraternal Beneficiary Associations: Waiver: Furnishing Proof of Death Blanks Not Waiver of Forfeiture. Where Laws of Missouri 1911, page 286, section 9, relating to fraternal bene-

ficiary associations provide that the certificate, the charter, or articles of incorporation, or, if a voluntary association, the articles of association, the constitution and laws of the society, and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement by the society and the member, and the laws of the society pertaining to proofs of death provide that all deaths and disability proofs shall be on the blank form prescribed by the national executive committee, etc., and further provided that the furnishing of such blanks and the execution thereof should in no case be considered as a waiver on the part of the national council of forfeiture of benefits by the member for any cause, etc., the furnishing of such proof of death blanks did not constitute a waiver of forfeiture for failure to make due payment of assessments.

Appeal from the Circuit Court of the City of St. Louis. —Hon. John W. Calhoun, Judge.

REVERSED.

W. Paul Mobley for appellant.

(1) The application, constitution and laws of a fraternal beneficiary association form a part of the contract and the members are bound by their provisions. Claudy v. Royal League, 259 Mo. 92; Gallup v. Royal Neighbors of America, 167 Mo. App. 85; Grand Lodge v. McFadden, 213 Mo. 269-284; Westerman v. Supreme Lodge, 196 Mo. 738; Easter v. Yeoman, 172 Mo. App. 292; Day v. Woodmen Circle, 174 Mo. App. 260; Sumerlin v. American Fraternal Stars, 167 N. W. 844; Sovereign Camp Woodmen of the World v. Compton, 215 S. W. 672; Allman v. Order United Commercial Travelers, 213 S. W. 429. (2) A by-law of a fraternal beneficiary society requiring assessments to be paid on or before the last day of the month is reasonable and valid, and a failure of a member to pay an assessment on or before the last day of the month, ipso facto, effects a forfeiture of all rights under the certificate. Such by-laws are self-executing. Day v. Woodmen Circle, 174 Mo. App. 260; Burchard v. Commercial Travelers Assn., 139

Mo. App. 606; Crawford et al. v. North American Union, 182 S. W. 1043; Sumerlin v. American Fraternal Stars, 167 N. W. 844. (3) Reinstatement of a member in a fraternal order, according to the terms of its constitution and laws, is not a waiver of the right to insist on forfeiture for nonpayment of future assessments. Crawford v. North American Union, 182 S. W. 1043. (4) A suspension, however effected, if acquiesced in by the member, constitutes an abandonment of his insurance. Bange v. Supreme Council, 179 Mo. App. 21. (5) The mere sending of blanks for proofs of death at the request of the beneficiary does not tend to prove waiver of a forfeiture. Allman v. Order of United Commercial Travelers, 213 S. W. 429; Wintergerst v. Court of Honor, 185 Mo. App. 376; Loesch v. Union Casualty & Surety Co., 176 Mo. 666; Boren v. Brotherhood, 145 Mo. App. 137; Chandler v. Ins. Co., 180 Mo. App. 400; Ridgeway v. M. W. A., 98 Kan. 240; Edgerly v. Ladies of Modern Maccabees, 185 Mich. 148; Sumerlin v. American Fraternal Stars, 167 N. W. 844; Showalter v. Modern Woodmen of America, 120 N. W. 994; Ronald v. Mutual Reserve Fund Life Ass'n, 30 N. E. 739. (6) The peremptory instructions to find for the plaintiff should not have been given. (7) The peremptory instruction to find for the defendant at the close of the evidence should have been given.

*James R. Van Slyke* and *James J. O'Donohoe* for respondent.

(1) Production of the benefit certificate and admission of death of the insured made out a prima-facie case for plaintiff, and cast upon defendant the burden of establishing an affirmative defense. And "after a prima-facie case has once been made out, the cause can never be taken from the jury." Keily v. K. of F. M., 179 Mo. App. 608; Gooden v. M. W. of A., 194 Mo. App. 666; Peterson v. Railroad, 265 Mo. 462, 479, 480. The burden of showing non-payment of assessments was on defend-

ant. Harris v. Ins. Co., 248 Mo. 304, l. c. 318 (cases cited). (2) Under the evidence in this case prompt payment of assessments had been waived as a matter of law. Wacker v. Ins. Co., 213 S. W. 869, cases cited. (3) The defendant is estopped from setting up the defense based upon nonpayent of assessment, for it was aware of that defense at the time it led plaintiff into the trouble and expense of preparing proofs of death. Tinsley v. Ins. Co., 199 Mo. App. 693, l. c. 704, 705; Shearlock v. Ins. Co., 193 Mo. App. 430; Pace v. Ins. Co., 173 Mo. App. 485; Oehler v. Ins. Co., 159 Mo. App. 696; Dolan v. Ins. Co., 88 Mo. App. 666; Bowen v. Ins. Co., 69 Mo. App. 272. The amount of expenses is immaterial. Keyes v. K. & L. of Security, 174 Mo. App. 671; Kidder v. Indemnity Co., 94 Wis. 538. Neither *ex parte* reservations nor nonwaiver agreements avoids waiver of defenses known to the insurer at the time the blanks are furnished. Authorities, supra; Granger v. Ins. Co., 119 Mich. 177; Marthinson v. Ins. Co., 64 Mich. 372; Corson v. Ins. Co., 113 Ia., 641; Brock v. Ins. Co., 106 Ia. 30; Hollis v. Ins. Co., 65 Ia., 454; Ins. Co. v. Moriarty, 37 S. W. 628; Ins. Co. v. Evants, 25 Tex. Civ. App. 300; Ins. Co. v. Phelps, 51 Neb. 623; Ins. Co. v. Kennedy, 47 Neb. 138; Cannon v. Ins. Co., 53 Wis. 585; Gaus v. Ins. Co., 43 Wis. 108; Supreme Tent v. Volker, 25 Ind. App. 627; McMillan & Son v. Ins. Co., 78 S. C. 433; Hendrickson v. Grand Lodge, 120 Minn. 36; Ins. Co. v. Baker, 83 Fed. 647. Acquiescence and abandonment cannot be invoked here for the reason that the alleged suspension is void. Besides, they are affirmative defenses and to be available must be pleaded. Rasch v. Bankers Life, 201 S. W. 919; Johnson v. Ins. Co., 197 S. W. 132; Wayland v. Indemnity Co., 166 Mo. App. 261.

BARNES, C.—This suit was instituted in the circuit court of the city of St. Louis, on November 16, 1916. It is based upon a beneficiary certificate issued by defendant National Council of the Knights and Ladies of Security, a fraternal beneficiary society organized in the

State of Kansas and duly licensed as such society in the State of Missouri. The certificate was issued in January, 1915, to Lizzie Wenom, a member of Harmony Council No. 618, St. Louis, Missouri, for the sum of three thousand dollars. Lizzie Wenom died July 2, 1916, and the plaintiff is her son, and named as beneficiary in the certificate. The trial was before the court and a jury, and resulted in a directed verdict for the plaintiff in the sum of two thousand two hundred seventy-six dollars and ninety-six cents, and judgment accordingly.

The petition was in approved form.

The answer, among other things, admits the issuance of the benefit certificate sued on to Lizzie Wenom, and avers: that the benefit certificate and her medical examination thereto attached, together with the constitution and laws of the society, should all be construed together as forming parts of the contract between the parties, and that the rights of the member and beneficiary are to be determined thereby; and that there were provisions in the constitution and laws of the defendant order in full force and effect and binding upon the parties, namely, that assessments for every month shall become due and payable on the first day of the month, and that the certificate of each member who has not paid such assessments and dues on or before the last day of the month shall, by the fact of such non-payment, stand suspended without notice, and no act on the part of the Council or any officer thereof, nor of the National Council shall be required as essential to such suspension, and that all rights under said certificate shall be forfeited. It further avers:

"Defendant further states that the said Lizzie Wenom did not pay her assessment and dues for the month of April, 1916, as required by said Benefit Certificate and said Constitution and Laws of the defendant; that because of said non-payment of said assessment and dues said Lizzie Wenom forfeited all rights of herself and beneficiary, this plaintiff, under said benefit certificate, that said Benefit Certificate thereupon became void,

and said Lizzie Wenom was suspended for failure to pay said assessment and dues, and remained in suspension during the months of April, May, June and July, 1916; that she was in suspension at the time of her death, and that plaintiff is, therefore, not entitled to recover.''

The reply consists of a general denial and the following paragraph:—

''For further reply to defendant's said answer, plaintiff states that the prompt payment of assessments and dues were waived by the defendant's established custom receiving from its members assessments and dues after the time fixed for the payment thereof without inflicting the penalty of suspension.

''That soon after the death of Lizzie Wenom, the plaintiff gave the defendant notice thereof; that with full knowledge and information of the nonpayment of the April, May, June and July, 1916, dues and assessments and the alleged suspension of Lizzie Wenom for nonpayment of said assessments and dues, together with full knowledge and information of the alleged forfeiture of the rights of said Lizzie Wenom and plaintiff under said benefit certificate, and the alleged voiding thereof, defendant furnished blank forms of statements for proofs of death to plaintiff with a request that the same be properly executed and returned to said defendant; that plaintiff, pursuant to said request, and at great trouble and expense, had properly made up and executed due proofs of death on the blank forms aforesaid, and plaintiff gave the same (fully completed) to defendant as requested by said defendant, which said completed proofs were received by defendant and accepted by it as satisfactory proofs of death under said benefit certificate, and were retained and have ever since said date been retained as such satisfactory proofs of death under said benefit certificate, and thereby the said defendant is estopped from claiming or asserting that at the time of the death of said Lizzie Wenom she stood suspended or that her rights or the rights of plain-

tiff under said benefit certificate were forfeited, or that the benefit certificate was void; that those things were all waived by defendant's conduct and actions as aforesaid."

To this reply defendant filed a general denial.

Plaintiff rested his case after introducing in evidence the beneficiary certificate and adducing proof of death of the insured. Among other provisions, the certificate contained the following:—

## "BENEFICIARY CERTIFICATE
### issued by
### THE NATIONAL COUNCIL
#### of the
### THE KNIGHTS AND LADIES OF SECURITY..

"THIS CERTIFICATE, Issued by the National Council of the KNIGHTS AND LADIES OF SECURITY, a Fraternal Beneficiary Society or Order:

"Witnesseth, That Lizzie Wenom, a member of Harmony Council No. 618, located at St. Louis, State of Missouri, in consideration of the agreements and warranties contained in her application and medical examination, is hereby admitted to Beneficiary Membership in this Order; and it is hereby agreed that; in consideration of the premises and in accordance with and under the provisions of the Laws of the Order, she is entitled to all of the rights, benefits and privileges of membership therein, and that at her death, she having complied with all of the provisions of the Constitution and Laws of the Order, now in force, or that may be hereafter enacted (without reservation or exception as to the nature, effect or scope of such after enacted Laws), and being at the time of her death a member of the Order in good standing, the said National Council hereby agrees to pay to Oscar Wenom, being relation to said member of son, the sum of

THREE THOUSAND DOLLARS.

"    .  .  .. This Beneficiary Certificate is issued by said National Council and accepted by the member only upon the following express warranties, conditions and agreements:

1. That the application for membership in this Order, made by the said member, together with the report of the medical examiner, which is on file in the office of the National Secretary, and both of which are made a part hereof, are true in all respects, and each and every part thereof shall be held to be a strict warranty and to form the only basis of the liability of the Order to said member or said member's beneficiaries, the same as fully set forth in this Certificate, and that the application and medical examination herein referred to and the constitution and laws of the society as the same now exist or as may hereafter be enacted, and this Beneficiary Certificate shall be construed together as forming parts of the contract between the National Council and the member.

"3. This Certificate is issued in consideration of the warranties and agreements made by the person named in this Certificate in said member's application to become a member of this Order and in said member's medical examination, and also in consideration of the payments made when initiated as a member, and said member's agreement to pay all assessments and dues to become due during the time said member shall remain a member of this Order, in the manner prescribed in the Laws of the Order.

"5. No action in any court can or shall be maintained on this Certificate until after the proofs of death and claimant's right to benefits as provided for in the Laws of the Order have been filed with the National Secretary, and passed upon by the National Executive Committee, nor unless brought within one year from the date of death of the member.

"6. This Certificate and contract is and shall be subject to forfeiture for any of the causes of forfeiture

which are now prescribed in the Laws of the Order, or for any other cause or causes of forfeiture which may be hereafter prescribed by this Order by the amendment of said Laws.

"10. It is further agreed by and between the said member and the said National Council that neither the Subordinate Council nor any officer thereof, or any officer of the Society, has the power to waive any of the provisions or conditions relating to this contract, and that if said member shall become suspended by failure to pay assessments and dues in the manner prescribed in the laws of the Order; or if his Certificate shall become forfeited for any of the causes of forfeiture as provided in the laws of the Order as the same now exist or as hereafter enacted, that the payment or acceptance of dues and assessments in a manner contrary to the provisions of the constitution and laws of the Order, shall not in any case be considered as a waiver of said suspension or of any forfeiture, and it shall not be the duty of the Society or, any of its officers or agents to make any investigation as to the health of any member making payment of assessments for purpose of reinstatement."

Defendant asked an instruction in the nature of a demurrer, which the court refused.

Defendant then offered evidence tending to show: that the monthly assessments and dues to be paid by Lizzie Wenom amounted to three dollars twenty-five cents, of which three dollars was due the National Council, and twenty-five cents was due Harmony Council. That the Ledger account fully covered the account under the certificate involved, and shows: February, 1915, assessment paid on the 2nd of that month; March, April and May, 1915, assessments were paid May 30th; the June, July and August, 1915, assessments were paid August 16th; the assessments for September, 1915, and March, 1916, were paid March 8, 1916; it does not show any other monthly assessments paid.

The proofs of death show the last five payments
of assessments made by Lizzie Wenom; in accordance
with the ledger account; and further, that insured was
suspended April, 1916, September, 1915, June, 1915,
March, 1915, and the date of each attempt to reinstate,
March 8, 1916; Aug. 16, 1915; May 30, 1915.

The evidence further tended to show: that all
such payments were made by Lizzie Wenom either di-
rect to Eric Johnson, financier of Harmony Council, or
to his wife and daughter who assisted him, and all
three testified no payments were made to them after
the payment of March 8, 1916; that the six dollars
fifty cents paid March 8, 1916, was credited to assess-
ments for September, 1915, and March, 1916. On Feb-
ruary 22, 1916, Lizzie Wenom was given a medical ex-
amination by the physician that examined her at the
time of making application for membership in defendant
order, and approval of such medical examination was
forwarded to Eric Johnson by the Nat'l Medical Direc-
tor prior to March 8, 1916.

Notice of suspension was given insured by Eric
Johnson, for failure to pay the April, 1916, assessment
and dues, said notice called attention to sections 112,
114, and 115 of the laws of the society (hereinafter set
out), which were printed on the back of the notice. The
insured called at Johnson's office, maintained at his
residence, in response to said notice, sometime during
the month of June.

The laws of the society were introduced in evidence,
and so far as germane to the time, manner, and method
of payment of dues, and assessments, and suspension
and reinstatement of members are as follows:

"Section 103. Assessments and Dues to be Paid
Without Notice. Before delivering the beneficiary cer-
tificate, upon the initiation of a member, the Financier
of the Council shall collect one assessment and the
local dues from the member for the month in which
the certificate is delivered, and, thereafter, on or before
the last day of each preceding month, the member shall,

without notice, pay the sum of one assessment and local dues to the Financier, or if holding a National Council transfer card, to the National Secretary.; provided, that whenever one assessment for any month shall not be sufficient to pay all death and disability claims within sixty days after proofs have been received and approved, then the National Executive Committee is hereby authorized to transfer from the reserve fund such sums as are necessary to pay all claims promptly as provided in section 53. The assessment and dues for the month in which the member dies shall be paid to the Financier before the amount due on certificate is paid the beneficiary."

"Section 112. Members Suspended by Their Own Act. The Financier of each subordinate Council shall keep a book wherein all regular and special assessments and dues received from each member holding a valid certificate shall be credited. Such entries shall be made showing the date when actually received by the financier. All assessments for every month shall become due and payable on the first day of the month. The certificate of each member who has not paid such assessment or assessments and dues on or before the last day of the month, shall, by the fact of such nonpayment, stand suspended without notice, and no act on the part of the Council or any officer thereof, or of the National Council, shall be required as essential to such suspension, and all rights under said certificate shall be forfeited. No rights under such certificate shall be restored until it has been duly reinstated by the member complying with the laws of the Order, with reference to reinstatements, notice of all special or extra assessments shall be given by publication of the notice of levy, and the date when due, in the official paper of the Order, and any member failing to pay such special assessment or assessments, in compliance with such notice on or before the last day of the month, for which levied, shall, by reason of such failure, stand suspended in the same manner as for failure to pay the regular

monthly assessments and dues, and he can only be re-instated by complying with the laws of the Order relating to reinstatement. Failure of members to re-ceive a copy of the official paper containing such notice of special assessments shall not excuse payment of such assessment or assessments in, compliance with this section.''

''Section 113. How Reinstated. Each member who has been suspended for nonpayment of dues, or non-payment of an assessment or assessments, shall only be reinstated in accordance with the Constitution and Laws of the Order.''

''Section 114. How a Member May Be Reinstated Within Sixty Days. Any beneficiary member suspended by reason of nonpayment of an assessment or assess-ments or dues may, within sixty days from the date of such suspension, be reinstated upon the following con-ditions and none other, viz.: If not engaged in any of the prohibited occupations mentioned in section 107 of these laws, he may be reinstated by payment, within sixty days from date of suspension, of all arrearage of every kind, including assessments and dues, for which he would have been liable had he remained in good standing; provided, however, that he be in good health at the time of making payment to the Financier with a view to reinstatement. The payment of any such as-sessments and dues for reinstatement shall be a war-ranty by such member that he is in good health at the time of such payment. Provided, further, that the re-ceipt and retention of such assessments and dues, in case the suspended member is not in good health, or is engaged in a prohibited occupation, shall not have the effect of reinstating said member or of entitling him or his beneficiaries to any rights under this benefit cer-tificate.''

''Section 115. How Reinstated After Sixty Days. Any member whose beneficiary certificate has been sus-pended for a term exceeding sixty days, and less than six months, must be re-examined by a Medical Ex-aminer of the Order upon special form of blank to be

prescribed by the National Medical Director (subject to approval of National Executive Committee) for that purpose and be approved by him.   He may then be reinstated, if in good health, upon receipt by the Financier of his Council of notice from the National Medical Director of the approval of such medical examination and by the payment of the assessment and dues upon which he was suspended, together with the assessment and dues for the month in which he reinstates, to the Financier of his Council.''

"Section 118.   Manner in Which Council or Individual May Pay Member's Assessment.   In all cases where the Subordinate Council shall determine to pay one or more assessments or dues for any member not already suspended, the same shall be done only by resolution or motion, regularly offered and carried for that purpose by a majority vote of the Council, which proceeding shall appear of record in the minutes of Secretary and the amount voted to be paid for any member must be transferred from the general fund of the subordinate council to the beneficiary fund at that time by a warranty drawn on the general fund; provided, however, that such payments by the Council must be made on or before the last day of the month in which the payment of assessment and dues is due from the member. In cases where one or more assessments or dues are paid for a member not already suspended, by any person, the said assessments or dues must be actually received on the date of the entry in the books of the Financier, and the money placed in the proper fund. In no case shall the Financier forward any assessment or assessments for any member unless the same have been ordered paid by majority vote of the Council, as above provided, or where the amount has actually been paid into the proper fund for or by the member, and under no circumstances shall the Financier himself advance or pay assessments for such members, and in no case shall the Financier date back or post date any receipt for assessments or entry in his books to make it appear

that said assessments were paid at an earlier time or date.''

Following the death of the insured, the beneficiary called on Johnson two or three times and requested blanks for proof of death, afterwards his attorney called and requested such blanks, these he declined to furnish because the insured was not ''in benefit'' at the time of her death.

It appears that on July 10, 1916, Johnson wrote the National Council at Topeka, Kansas, and received in reply the defendant's exhibit 3, which reads:

''Topeka, Kansas,
July 15th, 1916.

Mr. Eric Johnson,
    Financier Co. No. 618,
        No. 1726 N. Grand Ave.,
            St. Louis, Mo.
Dear Brother:
        In re: Lizzie Wenom, B. C. No. 369698.

I have your letter of the 10th notifying us of the death of the above named party and that request has been made upon you by James Van Slyke, attorney for the beneficiary, for blanks upon which to furnish proof of claim.

Blanks are herewith enclosed. You can tell Van Slyke and the beneficiaries that the furnishing of these blanks is not to be considered as an admission of liability on the part of the Society, but are furnished at the request of the beneficiary, and if they go to the trouble of making them up and incur any expense in connection therewith, it is done upon their own motion, and not upon our request.

It might be a good thing for you to turn this letter over to them with these blanks. Our Executive Committee is always willing to consider any matters presented to them, and there can be no objection, so far as I can see, to the presentation of any claim which these people think they have, but sometimes they doubt-

less know the situation, and in doing what we have done we are not admitting anything.

Yours fraternally,<br>
J. V. ABRAHAMS,<br>
National Secretary."

With the foregoing letter were enclosed blanks for proof of death. Johnson thereupon wrote the plaintiff to call, and when he called, first read and then delivered to him the letter received from the National Secretary, together with a letter written by Johnson himself, the latter reading:—

"St. Louis, Mo.<br>
July 17th, 1916.

Mr. Oscar Wenom,
   St. Louis, Missouri.
Dear Sir:

I hand you herewith Death Proof Blanks, as per your request, the same having been transmitted to me by the National Secretary, J. V. Abrahams, together with a letter dated Topeka, Kansas, July 14, 1916, addressed to me and signed J. V. Abrahams, National Secretary, in which letter all liability on the claim is denied, and it is stated that the Proof Blanks are furnished at the request of the Beneficiary, and that if you go to the trouble of making them up, and incur any expense in connection therewith, it is done upon your own motion, and not upon the request of the Society.

I enclose this letter from Mr. Abrahams and suggest that you present it, as well as this letter that I am writing, to your attorney for his consideration before taking any further steps in the matter, I am

Yours truly,<br>
E. J. JOHNSON,<br>
Financier."

He also delivered the blanks for proof of death that had been received from the National Secretary. On the blank for the beneficiary's affidavit to establish proof of death and claim of benefit appears:

204 M. A.—36

"Important—The furnishing of this blank by the National Council of the Knights and Ladies of Security shall not be considered an acknowledgment of any liability on the part of the Society."

And on the blank for Proof of Death appears:

"Notice—The furnishing of these blanks of the National Council of the Knights and Ladies of Security shall not be considered an acknowledgment of liability on the part of the Order, or as a waiver of any forfeiture."

These blanks were filled out at an expense of eleven dollars to the plaintiff, and mailed to defendant's head office, where the claim was rejected on the 31st day of October, 1916. These proofs of death showed payments of amounts as hereinbefore set out.

The laws of the society pertaining to the proofs of death is as follows:

"Section 166. Form to Be Prescribed by the National Executive Committee. All death and disability proofs shall be upon the blank form prescribed by the National Executive Committee and shall provide that each statement shall be signed and sworn to by the person making the same before some officer competent to administer oaths. But the furnishing of such blanks and execution thereof shall in no case be considered as a waiver on the part of the National Council, of forfeiture of benefits by the member for any cause, if any exists, nor shall it obviate or destroy the right to demand further proof."

The plaintiff was offered in rebuttal, and testified:

"Q. I will ask you to state, Mr. Wenom, after you were furnished with blank proofs of death, and this letter, defendant's Exhibit 3E, whether if you thought at that time they were going to insist upon a forfeiture, whether you would have gone to the expense of making out the proofs of loss? A. No, sir.

"Q. After you received this letter you made out these proofs of loss and sent them in? A. Yes, sir.

"Q. Did you at the time you made them out think it was necessary in order to have your rights under the policy? A. Yes, sir.

"Q. And, did you at the time you were furnished them believe it was necessary for you to do that in order to have your claim considered? A. Yes, sir.

"Q. Did you at that time believe if you did furnish these proofs of loss the claim would be paid? A. Yes, sir."

The Forty-Sixth General Assembly repealed all of article IX, chapter 61, Revised Statutes of Missouri, 1909, entitled, "Fraternal beneficiary associations," and enacted in lieu thereof, new sections for the government of fraternal benefit societies, Laws of Missouri, 1911, page 284 et seq. The certificate here involved was issued after said enactment, and the issues now before us are to be determined with said Act in mind.

Section 9 of said Act, Laws of Missouri, 1911, page 286 provides:

"Sec. 9. Certificate—Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or, if a voluntary association, the articles of association, the constitution and laws of the society, and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member   . . ."

By thus defining the agreement between the parties and giving full sanction thereto, it must of necessity be held that the provisions of the certificate, constitution and laws of the society are to be recognized as parts of the agreement between the insured and defendant and as binding upon the respondent as upon the insured.

The agreement was that a failure to pay all assessments and dues for every month within such month, should, from the fact of such non-payment alone, operate as a suspension of the member and of a forfeiture of all rights under the certificate (other than the rights

by reinstatement). It is automatic in its application and self enforcing upon the failure to pay within the month, such is clear from the reading of the agreement.

The agreement further provided for reinstatement after such suspension of a suspended member not in a prohibited occupation, if sought within sixty days, by payment of all arrearages (which included all assessments and dues for which the member would have been liable had good standing been maintained), provided the suspended member was in good health at the time of making such payment, the condition of good health being thereby warranted. Reinstatement after suspension for a term exceeding sixty days and less than six months was to be had upon reexamination by a medical examiner of the order, approved by such officer, receipt of notice of approval by the financier of the local council from the National Medical Director, and the payment while in good health of the assessment and dues upon which suspension was had together with the payment or assessments and dues for the month in which reinstatement is made.

The insured was suspended in March, June and September, 1915, and April, 1916. She was reinstated within sixty days after the March and June, 1915, suspensions by payment of all arrearages. She was reinstated in March, 1916, within six months after the September, 1915, suspension, by submitting to the medical examination, paying the assessments and dues for September, 1915, and March, 1916, her medical examination having received the proper approval, and notice thereof having been given the financier of Harmony Council. These three reinstatements appear to have been obtained in strict compliance with her agreement with defendant, and we do not find any evidence of waiver of prompt payment of assessments and dues arising from such reinstatements, nor any evidence of waiver of the lapsing of insurance benefits by reason thereof.

No effort to reinstate appears to have been made after the April, 1916, suspension. The insured died while suspended. Respondent's right of recovery is

predicated, not upon the fact of actual payment of all assessments and dues for April, 1916, and succeeding months (note his reply, the admission in proof of death, and evidence in rebuttal), but upon a waiver of forfeiture of insurance benefit by furnishing blanks for proof of death.

Whether the provision in the certificate, that neither the subordinate council nor any officer thereof, or any officer of the society, has power to waive any of the provisions or conditions relating to this contract, is valid and binding, is unnecessary to a determination of the question of waiver.

The agreement as evidenced by the certificate provides no action can or shall be maintained on the certificate until after the proofs of death and claimant's right to benefits have been filed with the National Secretary and passed upon by the National Executive Committee, nor unless brought within one year from the date of death of the member. The constitution and laws of the defendant provides: that all death proofs shall be upon the blank form prescribed by the National Executive Committee and signed and sworn to by the person making the same before some officer competent to administer oaths; that the *furnishing* of such blanks and the *execution* thereof shall in no case be construed as a waiver on the part of the National Council, of forfeiture of benefits by the member for any cause, if any exists.

The parties had agreed upon the procedure to be followed upon the very contingency here arising. It was the duty of the appellant to furnish the blanks, and of respondent to execute them as required by the constitution and laws of the order, which required them to be verified. Whatever expense was incurred in the preparation of the proofs of death was necessarily incidental to the presentation of the claim of respondent for consideration by the National Executive Committee, and was required by the agreement to procede a suit based on the certificate.

The letter from the national Secretary authorizes the inference that he took a different position with reference to furnishing blanks, from that taken by the financier of the subordinate council; but, be that as it may, the most we find in it, is an assurance that the executive committee is always willing to consider claims presented to it. Learned council for respondent call attention to the phrase in the letter, "but sometimes they doubtless know the situation." While this phrase is indefinite as to its meaning it doesn't indicate an intentional waiver of the known right of forfeiture of the insurance benefits because of suspension of the member.

The purport of the letter is to comply with respondent's request, made through its attorney, to furnish blanks. It specifically states that trouble and expense in making up the proofs, is not upon request of appellant, but it is to be upon respondent's own motion. Further, the writer of the letter saw no objection to the presentation of any claim, "these people" thought they had, because the Executive Committee functioned willingly in considering any matter presented to it. According knowledge of the situation to respondent and his attorneys, courteously left the presentation or non-presentation of the claim solely to their determination, at the same time advising that appellant admitted nothing. The blanks accompanying this letter had printed thereon, that the furnishing thereof was neither an acknowledgment of liability on the part of appellant or a waiver of forfeiture by it. In the light of the insurance contract, the endorsement on the blanks, and the letter, we are unable to find any evidence of waiver of forfeiture, or that there is the slightest evidence from which it may fairly be concluded that the furnishing of the blanks or the letter from the National Secretary, jointly or severally, induced respondent to go to the expense of making them up, thereby estopping appellant from taking advantage of the forfeiture. As much as we abhor the idea of a forfeiture, we see

nothing in this case to relieve respondent therefrom.

It is further argued that the assessments might have been paid by Harmony Council, or paid by insured direct to the National Secretary, and evidence that they were not so paid was a burden on defendant to be removed by so showing. The first is negative in that the books of the financier show no entry of such a payment as required by section 118 of the laws of the society, and until the issuance of a National Council Transfer Card to the insured had been shown (section 103 of the laws of the society), or some evidence of payments in such manner, no presumption of any such method of payment could be indulged.

We find no evidence of waiver of the forfeiture of the insurance benefits (Allman v. Order of United Commercial Travelers of America, 277 Mo. 678, 213 S. W. 429), and the showing appears conclusive that respondent is not entitled to recover.

In view of the above and foregoing the Commissioner recommends that the judgment of the trial court be reversed.

PER CURIAM:—The foregoing opinion of BARNES, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.